IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD J. HILL, | ) | |
| | ) | Case No. 2:19-cv-159-HYJ-MV |
| Plaintiff, | ) | |
| | ) | U.S. District Judge: |
| v. | ) | Hon. Hala Y. Jarbou |
| | ) | |
| JUSTIN WONCH, and | ) | U.S. Magistrate Judge: |
| TOWNSHIP OF FORSYTH, | ) | Hon. Maarten Vermaat |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Is it an unconstitutional excessive use of force for a police officer to "bodyslam" and beat an unarmed, obese elderly and intoxicated man so severely as to cause 21 fractures after seeing the man unsuccessfully lunge towards his significant other? Is it unconstitutional for a police officer to pull a person to his feet and stand him up after just breaking his spine? Is it permissible for an officer to drag a severely injured person into the snow outside without performing any assessment of his injuries? Is it permissible for a police officer to leave someone face-down in the snow for *any* period of time where doing so is purely gratuitous and serves no law enforcement function whatsoever?

As set forth in the following pages, it is apparent that Defendants are not entitled to summary judgment on any issue—as genuine issues of material fact exist, particularly when the facts are viewed in a light most favorable to Mr. Hill. All of the arguments raised should be found in favor of Mr. Hill and against Defendants. At the very least, Mr. Hill is entitled to try his case

before a jury. There was absolutely no justification for the amount of force used or the conduct of Defendant Wonch. It is not a case where summary judgment is appropriate. Richard Hill's clearly established constitutional rights were violated.

## FACTS

Defendant Justin Wonch—a police officer for Forsyth Township, Michigan—severely assaulted Richard Hill on the night of March 22, 2019 while investigating a domestic violence call. Hill, his longtime girlfriend, Viki Lara and friend Timothy Normand were at Lara and Hill's apartment. (**Exhibit 1—Excerpts of Deposition of Eyewitness Timothy Normand, p. 12**). Mr. Hill had been drinking. (**Exhibit 1, pp. 12-13**). Hill wanted Ms. Lara to buy more alcohol for him and she refused—they hollered at each other. (**Exhibit 1, p. 13**).

Normand came into the kitchen and observed Mr. Hill take a couple swings at Ms. Lara. However, when asked if Hill actually struck Lara, Normand said "I couldn't really tell, but [Ms. Lara] told me later that he never hurt her. So I don't believe he even hit her." *Id.* Ms. Lara called 911 and Normand intervened, getting between the couple. He tussled with Hill and they ended up on the floor. Then Mr. Hill calmed down and remained so until later informed he was under arrest. *Id.*

### *The 911 Call and Central Dispatch Records*

In Defendants' moving papers, counsel for Defendants has included partial records from Marquette County Central Dispatch. See PageID.139-PageID.141 & PageID.143-PageID.145. However, the records Defendants provide from Marquette County Central Dispatch are not complete. Additional records subpoenaed from Marquette County Central Dispatch establish

that the following was known prior to Officer Wonch (referred to as 8416J) arriving at the apartment:

| | | |
|---|---|---|
| [9]:38:33 | | "NO WEAPONS IN THE HOUSE" |
| [9]:41:35 | | "Event spawned for DOMESTIC" |
| [9]:41:47 | | "[LAW] 8416J ADVISED, DECLINED ANOTHER UNIT" |

(**Exhibit 2—Excerpts of Central Dispatch Subpoena Response, p. 002-003**).

8416J is Officer Wonch in the central dispatch records subpoenaed for the responding law enforcement agency:

```
Prime   8416J
Unit:   WONCH, JUSTIN
```

(**Exhibit 2, p. 004**). In other words, before arriving on scene, there is a question of material fact as to whether Officer Wonch knew that it was a domestic call, and yet declined backup. It is also made clear before Wonch was even on the scene that Hill was unarmed. (**Exhibit 2, p. 003**). Defense counsel engaged in strategic behavior and successfully moved to stay discovery on qualified immunity grounds days before Plaintiff's counsel was set to take Wonch's deposition at a mutually-agreed time and place. *See* PageID.98-PageID.99. As a result, many of these factual issues could not be reconciled.

During the course of Wonch's investigation, Lara, Normand and Hill were all kept in the same room. *See generally*, (**Defendants' Exhibit 1 ("DExh1")—Officer Wonch Bodycam Video, 1:00-13:12**) At points, there was a great deal of crosstalk and commotion. E.g., (**DExh1, 2:30-3:00**).

Ms. Lara was an unreliable witness and inflamed the situation. She complained of being assaulted. E.g., (**DExh1, 1:00-1:15**). She also complained that she had had a heart attack the day

before. (**DExh1, 2:55-3:05**). Ms. Lara also babbled incoherently at points. *See generally*, (**DExh1, 2:30-3:00**). However, Ms. Lara's concern with her ostensible injuries did not last long. While Officer Wonch was taking down the parties' information from their IDs, her focus turned to showing off a broken vinyl record that she found in the snow, noting that the record sleeve is autographed. (**Exhibit 2, 8:50-9:22**). Ms. Lara then summons Officer Wonch over to a lighted hallway to demonstrate her injuries. (**Exhibit 2, 11:54-12:50**). To Wonch, she showed off bruises she claimed to be from Mr. Hill's assault. When doing so, a hospital warning bracelet stating "FALL RISK" is also clearly visible on her arm. For his part, Mr. Hill denied assaulting Lara, at points asserting his innocence. E.g., (**DExh1, 13:55-14:05**).

Irrespective, once Mr. Hill drunkenly lunged on the couch, the improper use of force began. At the time of this incident, arrest records show that Mr. Hill was ***68 years old, was 5'7" in height and weighed 250 lbs***. *See* PageID.129. When Wonch told Hill he was under arrest for domestic violence, Mr. Hill lunged in Ms. Lara's direction. However, he was unable to reach her because he was physically blocked by a couch and a coffee table. (**Exhibit 3—Private Investigator Wally Helmila's June 12, 2019 Recorded Interview of Mr. Normand, 1:40-2:30**).[1] It is plainly seen during the assault that Wonch is holding Hill's left arm in his left hand, holding a readied handcuff in his right hand, while assaulting him. (**DExh1, 15:05-15:30**). During this period, Hill is repeatedly saying "don't kill me." See *id*.

What's worse, Mr. Normand believed could not have gotten to Ms. Lara anyway. (**Exhibit 3, 1:40-2:30**). He was five to six feet from her. *Id*. He did not make contact with her.

---

[1] The content of the recorded interview will be admissible at the time of trial by way of its use for refreshing the recollection of Mr. Normand and Mr. Helmila, if necessary. See FRE 612-613. Mr. Normand's interview may also be used for impeachment purposes as to other witnesses, such as Officer Wonch himself. See FRE 801(d)(1) or (2).

Officer Wonch "jumped on him, grabbed him, and got him down to the ground." (**Exhibit 3, 2:30-2:45**). Jack was on the ground, up against the wall. (**Exhibit 3, 2:45-2:50**). Wonch started repeatedly kneeing him. Mr. Hill was "flat against the wall not moving and [Wonch] just kept kneeing him and kneeing him..." (**Exhibit 3, 3:15-3:25**). Wonch systematically kneed Hill's back, moving up the back with knee strikes. (**Exhibit 3, 3:25-3:47**). At that point, he was "well subdued." (**Exhibit 3, 3:48-3:58**). His arms were able to be handcuffed according to Mr. Normand. (**Exhibit 3, 4:00**). Normand observed that at least one arm was straight, while the other could have been under his body. (**Exhibit 3, 4:00-4:57**). But he thought both arms were freed. *Id.* There were six to eight knee strikes to the back. (**Exhibit 3, 5:06-5:24**).

During the attack, Mr. Hill says "you're hurting me." (**DExh1, 15:20-15:25**). Defendant Wonch responded by screaming "[f]ucking right. You wanna fucking attack people right in front of me?! Stupid fuck!" (**DExh1, 15:25-15:30**). Officer Wonch repeatedly hit Mr. Hill with his knee and the heel of his hand. Witnesses differ in whether the beating continued after Mr. Hill was cuffed. Though Defendant Wonch did have a body cam, it did not capture much of the beating as he was up close, pummeling and cuffing the elderly man. Mr. Hill uttered cries of pain and asked if he had done something wrong. Defendant Wonch responded by saying "shut the fuck up. Fucking piece of shit." (**DExh1, 15:58-16:04**). Wonch then screamed "YOU FUCKING WENT AFTER HER IN FRONT OF ME!" (**DExh1, 16:05-16:09**). Wonch's screaming was so loud at this point that it distorted on his bodycam's microphone. Around this time, Mr. Hill cries that he "didn't do nothin." *Id.*

After the assault, Defendant Wonch made no assessment of injuries and provided no first aid to Mr. Hill. (**DExh1, 16:30-17:19**). Wonch told him to stand up. Mr. Hill said "I'm trying

5

to," multiple times. (**DExh1, 16:30-16:45**). Ms. Lara can be heard in the background making a suggestion about backup. (**DExh1, 16:46-16:55**). Defendant Wonch then recruited witness Timothy Normand to lift Mr. Hill and stand him up. (**DExh1, 17:00-17:19**). Unable to stand, Mr. Hill fell back to the ground. *Id.*

      Wonch then got Mr. Normand to help drag Mr. Hill outside. (**DExh1, 17:19-17:50**). While the two drag Mr. Hill out of the apartment, Normand can be heard asking Officer Wonch if he was going to get in trouble for what they were doing. (**DExh1, 17:20-17:23**). Once outside on the icy, snow-covered sidewalk, Wonch stops dragging Hill. (**DExh1, 17:48**). Normand continues trying to get Hill to Wonch's patrol car. However, Wonch instructed Normand to stop and leave Mr. Hill, imploring him to get up. (**DExh1, 17:50-18:33**). Around this 18:30, two ambulances can be seen arriving. Wonch says "Sweet. [sigh] They can help me load him in the car." (**DExh1, 18:33-18:42**). Around 19:28, it can be seen that Wonch had instructed Normand to leave Hill face down in a snowbank. (**DExh1, 19:28**). The audible squeaking of boots and tires on the snow is plainly audible during the outdoor portion of the video. Point being, it was intensely cold out. Wonch, after refusing backup, had instructed an untrained third-party face down on the snow-covered ground. While the EMTs were present, Wonch implored the grievously injured man to "stand up like a big boy" and walk, speaking to him like a child. (**DExh1, 19:25-20:49**). Even after the ambulances arrived on the scene at no point did Wonch ask the EMTs to perform any sort of medical examination on Mr. Hill. (**DExh1, 19:28-19:55**). Once Hill was loaded into the patrol car, Wonch determined that Mr. Hill did not even have any keys (Lara was accusing him of refusing to provide her with a set of keys); Wonch gratuitously offered to kick the door down for Ms. Lara. (**DExh1, 20:46-20:55**).

6

*<u>Marquette County Jail Records Support Excessive Force Claims and Questions of Material Fact</u>*

After being shoved into Wonch's patrol vehicle, Richard Hill was taken to the Marquette County Jail. Deputy Kate Bonifas was the control officer at the time. Her log was produced in response to a FOIA request to the county. She stated the following in a two-page Notes Report concerning a Rules Violation, (**Exhibit 4, excerpted below, highlighting added**):



As to the assault allegations to which Wonch responded, he noted "[n]o visible injuries" in the section of the intake form reserved for victim injuries. (**Exhibit 5—Marquette County Jail Intake Form, p. 2**).

### *Wonch's Written Report Contradicts Both His Body Camera Video and His Own Affidavit*

Officer Wonch told a very different story in his report. When initially reporting the incident, he stated the following:

> I informed Richard that he was under arrest for Domestic Violence. He was not compliant. I tried to reason with Richard and he stated he was not going to be arrested. Richard stood up aggressively and stated that I was not going to arrest him. He got upset and charged after Vicki and Timothy. Richard was pushing through a living room couch in an attempt to get at Vicki and Timothy. I grabbed Richard by the jacket collar and ***assisted him to the ground***. I had Richard's left arm while he was face down on the floor. I was instructing Richard to give me his other arm. Richard was not complying. I gave Richard several ***knee strikes toward the hip / waist area*** in an attempt to gain compliance. Richard finally complied and he was cuffed behind his back. I attempted to ***help*** Richard from the floor to bring him to the patrol car. Richard ***refused*** to stand or walk. I drug [sic] Richard out of the residence by his coat collar. UP Health Systems EMS helped me get Richard into the rear seat of the patrol vehicle.

PageID.132 (emphasis added). There are clearly factual discrepancies between the accounts of Normand, Wonch's report, Wonch's affidavit, and the body camera footage. Not to mention Ms. Lara's deposition testimony, where she said that Wonch was also striking Mr. Hill in the back with his fist and forearm repeatedly. (**Exhibit 6—Excerpt of Ms. Lara's Deposition Transcript, pp. 90-91**).

Mr. Hill was severely injured by the attack. He had multiple abrasions on his face and blood in his mouth when examined in the emergency department. Worse, Defendant Wonch had fractured Mr. Hill's spine in three places and broken 10 of his ribs. The spinal fractures required emergency neurosurgery. *See* (**Exhibit 4, p. 2**). He spent two months in the hospital/nursing home.

## ARGUMENT

I. **SUMMARY JUDGMENT STANDARD**

The facts set forth by Plaintiff must be relied upon unless blatantly refuted by incontrovertible evidence, like a video recording. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Absent such evidence in a qualified immunity case, this usually means that the court should "adopt[] ... [P]laintiff's version of the facts. *Id.* In ruling on a motion for summary judgment, the Court must follow the axiom that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255; 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

II. **DEFENDANT WONCH IS NOT ENTITLED TO SUMMARY JUDGMENT ON QUALIFIED IMMUNITY GROUNDS**

A. *The Qualified Immunity Analysis*

The Supreme Court has ruled that a two-step inquiry should be followed to decide if qualified immunity applies to a government official's actions: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right[];" and (2) whether the violation involved a right that was clearly established, to the extent that a reasonable person would have known. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 22 (2001) (overruled in part on other grounds). The question into whether a constitutional right was violated requires a balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); see *Graham*, *supra*, at 396, 109 S.Ct. 1865.

9

Courts have discretion to decide the order in which to engage these two prongs. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *See Brosseau v. Haugen*, 543 U.S. 194, 195, n. 2, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam*); *Saucier*, *supra*, at 201, 121 S.Ct. 2151; *Hope v. Pelzer*, 536 U.S. 730, 733, n. 1, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S., at 249, 106 S.Ct. 2505.

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(a). In making that determination, a court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); see also *Anderson*, *supra*, at 255, 106 S.Ct. 2505.

**B.**     *Discussion—Excessive Force*

The Fourth Amendment bars police from using excessive force when arresting someone. *See Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). To comply with the Fourth Amendment, the use of force by a police officer has to be objectively reasonable under the totality of the circumstances. *See Kent v. Oakland Cty.*, 810 F.3d 384, 390 (6th Cir. 2016). In doing this, the Court must view the situation from the perspective of a reasonable officer on the scene at the time and without the benefit of hindsight. *See id.* To determine whether the use of force is reasonable, the Court should "[1] consider the severity of the crime at issue, [2] whether the

suspect posed a threat to the officers or others, and [3] whether the suspect was actively resisting arrest or attempting to avoid arrest by fleeing." *Smith v. City of Troy, Ohio*, 874 F.3d 938, 944 (6th Cir. 2017). In this context, the analytical framework for qualified immunity—set forth above—remains the same.

Here, the crime at issue was simple assault/potential domestic assault, both of which are low level misdemeanors. Mr. Hill, an intoxicated, obese, elderly person made an impossible lunge towards Ms. Lara, blocked by a couch and a coffee table. There was little risk to third parties. To the extent that Hill was resisting arrest before being "bodyslammed," once he was on the ground it is a given that there are material questions of fact as to whether he continued to resist. Mr. Normand said he was subdued and capable of being cuffed once on the ground when interviewed. There is "simply no governmental interest in continuing to beat [an arrestee] after he ha[s] been neutralized, nor could a reasonable officer [think] there is." *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002). For what it is worth, Mr. Normand testified he felt that the amount of force he observed Wonch use on Mr. Hill was inappropriate, overboard and that Hill's civil rights were violated. (**Exhibit 1, pp. 35-36**).

Further, fact questions exist about the reasonability of Wonch's initial actions—Defendants cite *Rudlaff v. Gillespie*, 792 F.3d 638, 642 (6th Cir. 2015) for a "simple dichotomy" about the use of force. However, Defendants cite no law stating that an officer may "BODYSLAM" a suspect who is resisting arrest. Questions of material fact as to the reasonableness of Wonch's initial actions insofar as Wonch himself is equivocal as to the amount of initial force he used. In his affidavit, he claims that he "pull[ed] him down off the back of the couch to the floor." PageID.148, ¶ 9. In his police report, he claims that he "assisted him down."

11

PageID.132. Then, to Deputy Bonifas, he claimed he "BODYSLAMMED" him. (**Exhibit 4, p. 1**). Richard Hill on the other hand claimed that "he beat me up." *Id.* There are questions of material fact as to the reasonability of Wonch's body slam of Mr. Hill as well as the gratuitous beating that followed.

Further still, "unnecessary detention in extreme temperatures ... violates the Fourth Amendment's prohibitions on unreasonable searches and seizures." *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002). This right has been defined a clearly established in the Sixth Circuit at least since 2002. *See id.* at 945-946. Here, there was no justification whatsoever for Wonch to leave Hill facedown in the snow. He intentionally chose to do so, instructing Normand to stop trying to take him to the patrol car. Doing so creates questions of material fact as to the violations of Mr. Hill's rights under either a Fourth or Eighth Amendment analysis.

*"Clearly Established" Analysis.* "[T]here undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself and others." *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009). Whether or not a suspect is "handcuffed when officers applied violent force has not been a decisive consideration in our determination of whether a suspect's freedom from excessive force was clearly established." *Malory v. Whiting*, 489 Fed.Appx. 78, 85 (6th Cir. 2012) (citing *Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009)). In identifying a clearly established right, qualified immunity does not require that the "very action in question has been proven unlawful, but it is to say that in the light of pre-existing law the unlawfulness is apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The recorded interview of Mr. Normand creates fact issues as to whether Mr. Hill was subdued when Wonch chose to apply multiple knee strikes. Per Normand, Mr. Hill was "flat against the wall not moving and [Wonch] just kept kneeing him and kneeing him..." (**Exhibit 3, 3:15-3:25**). Wonch systematically kneed Hill's back, moving up the back with knee strikes. (**Exhibit 3, 3:25-3:47**). Once Hill was on the ground, he was "well subdued." (**Exhibit 3, 3:48-3:58**). His arms were able to be handcuffed according to Mr. Normand. (**Exhibit 3, 4:00**). Normand observed that at least one arm was straight, while the other could have been under his body. (**Exhibit 3, 4:00-4:57**). But he thought both arms were freed. *Id.* According to Normand alone, there were six to eight knee strikes to the back while Hill was subdued. (**Exhibit 3, 3:48-3:58 & 5:06-5:24**). Under the Sixth Circuit's analysis, Plaintiff presents material questions of fact as to his excessive force claim.

Arguments about Hill's maltreatment after he was cuffed similarly fail. On this issue, " ... the right in question is an arrestee's right to medical attention..." Once taken into custody, a person's right to medical attention is a clearly established constitutional right. *see DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 198–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Even under the Eighth Amendment's deliberate indifference standard, Wonch's actions create questions of material fact. This is essentially a given. Mr. Hill said "you're hurting me," to which Wonch responding by saying "[f]ucking right..." and continued beating him. Then, despite the fact that Hill said he was trying to stand up repeatedly when instructed (an obvious sign of a spinal injury), Wonch decided to drag him outside and leave him in the cold, with the assistance of an untrained

13

eyewitness. Simply put, there are fact questions as to whether Mr. Hill's clearly established rights were violated by Wonch being deliberately indifferent to Hill's distress.

**III.    BECAUSE DEFENDANT WONCH'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED, DEFENDANT FORSYTH TOWNSHIP IS NOT ENTITLED TO SUMMARY JUDGMENT.**

Mr. Hill's claim against the Township is brought under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny (*e.g.*, *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). In Defendants' moving papers, the Township admits it is not seeking summary judgment on the elements of the *Monell* claim. Rather, it argues that because the § 1983 claim against Officer Wonch fails, the *Monell* claim against it must also fail. *See* PageID.123-PageID.124.

Because Mr. Hill's claim against Defendant Wonch should not be dismissed via summary judgment and Defendant Wonch violated Mr. Hill's constitution rights, the Township's argument should also fail. Forsyth Township is not entitled to summary judgment. Moreover, Defendants stayed discovery on the basis of qualified immunity days before the previously-scheduled depositions of Defendant Wonch himself and the Township's 30(b)(6) witness anticipated to address *Monell* liability. Given this, the Township's Motion for Summary Judgment should be denied.

**IV.    DEFENDANT WONCH IS NOT ENTITLED TO SUMMARY JUDGMENT ON MICHIGAN ASSAULT AND BATTERY CLAIMS BROUGHT AGAINST HIM.**

Under Michigan law, a person can bring an assault and battery claim against an officer who uses "more force than necessary in effecting an arrest." *White v. City of Vassar*, 157 Mich. App. 282, 403 N.W.2d 124, 130 (1987) (per curiarm). When, as here, Plaintiff is alleging an intentional tort under Michigan law, the test set forth in *Odom v. Wayne County*, 482 Mich. 459,

14

760 N.W.2d 217, 228 (2008) should be used (inapplicable portions of the analysis such as high-level officials and alleged negligent acts are omitted):

* * *

> (2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

* * *

> (4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* test by showing the following:
>
>   (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
>   (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
>   (c) the acts were discretionary, as opposed to ministerial.

Here, under §4(a) of the *Odom* test, there are questions of material fact as to whether Wonch reasonably believed that he was acting within the scope of his authority. First, Wonch cannot reasonably believe that he was reasonably acting within the scope of his employment by refusing to make medical assessments, intentionally continue to beat someone in response to cries of pain and hurt, or intentionally leave someone facedown in a snowbank. Second, Mr. Normand, an eyewitness, asked Wonch if he was going to get in trouble for helping drag Mr. Hill outside.

Questions of material fact are very present as to §(4)(b) of the *Odom* test. There facially evident questions of fact as to whether Wonch was acting in good faith and without malice. The lack of good faith and presence of malice is supported by the malicious statements of Officer Wonch as he assaulted Mr. Hill. Fact questions on the lack of good faith/presence are further

supported by the lack of any legitimate law enforcement purpose to continuing to beat Mr. Hill after he was subdued. It is a given that Wonch's conduct raises questions of material fact as to whether he acted maliciously, wantonly, or with reckless disregard for Mr. Hill's rights. This creates a question of material fact under §(4)(b) of the *Odom* test. *See id.* 760 N.W.2d at 224-225.

Plaintiff concedes that §(4)(c) of the *Odom* test is met here. There is no question that Officer Wonch's acts were discretionary and not ministerial. However, because there are questions of material fact as to §§(4)(a)-(b), Wonch is not entitled to governmental immunity as to the assault and battery claims as a matter of law.

Finally, because there are material questions of fact as to whether Officer Wonch used objectively unreasonable force, the facts here pose questions of material fact as to Mr. Hill's state law assault and battery claim.

## **CONCLUSION**

Plaintiff presents questions of material fact that are more than sufficient to result in the denial of Defendants' Motions for Summary Judgment. Plaintiff asks the Court to do so. Plaintiff further requests that the Court order a status conference where the re-opening of discovery and the length of continued discovery be determined.

        Respectfully submitted,

        **Numinen, DeForge & Toutant, P.C.**

           s/ Phillip B. Toutant

        _____

        PHILLIP B. TOUTANT (P72992)
        Attorney for Plaintiff
        105 Meeske Ave.
        Marquette, MI 49855
        (906) 226-2580
        phillip@numinenlaw.com