UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD J. HILL,

    Plaintiff,

v.

JUSTIN WONCH, et al.,

    Defendants.

_____/

Case No. 2:19-cv-159

Hon. Hala Y. Jarbou

## **OPINION**

This is a civil rights action under 42 U.S.C. § 1983. Plaintiff Richard J. Hill accuses Officer Justin Wonch, a law enforcement officer at the Forsyth Township Police Department, of using excessive force when making an arrest. (Compl., ECF No. 1.) Hill claims that this excessive force amounted to a violation of his Fourth Amendment rights. He is also suing Forsyth Township, alleging that its failure to properly train its police force led to the Fourth Amendment violation. The complaint states three claims: (1) excessive force in violation of the Fourth Amendment against Wonch (Count I); (2) failure to train against Forsyth Township (Count II); and (3) assault and battery against Wonch, for which Forsyth Township is vicariously liable (Count III). Before the Court is Defendants' motion for summary judgment on all Counts. (ECF No. 33.) It will be granted in part.

### **I. Background**

On the night of March 22, 2019, Officer Wonch responded to a report of domestic violence at 427 Liberator Street in Forsyth Township. (Case Report, ECF No. 34-2, PageID.129.) Officer Wonch found three people at the residence when he arrived on scene: Hill, Vickie Lara (Hill's romantic partner), and Tim Normand. Lara said she had called the police because Hill had punched

her. (Wonch Body Camera Footage 1, ECF No. 34-1, 5:55-6:00, 12:10-12:45.)[1] Hill is clearly intoxicated and often raises his voice. Normand corroborated Lara's account. (*Id.*, 4:23.) Normand said he intervened to help Lara and that he and Hill exchanged blows. (*Id.*, 4:15-4:55.) After interviewing everyone and examining Lara, Officer Wonch asked Hill to stand up and turn around so that he could be handcuffed. (*Id.*, 13:10-13:25.) Hill repeatedly refused. He said, "You are not fucking arresting me" (*id.*, 13:16), called Officer Wonch a "punk ass motherfucker" (*id.*, 13:18), and said he would not go "compliantly" (*id.*, 13:50). Eventually, Hill stood, but still refused to place his hands behind his back to be handcuffed. (*Id.* 14:40-14:50.) Hill then ran at Lara, who was across the room with a couch and coffee table between them. (*Id.*, 14:55.)

Officer Wonch caught up to Hill, grabbed him, and brought him to the ground. (*Id.*, 14:57-15:00.) A struggle on the ground ensued. In the body camera footage, Officer Wonch stated "give me your arm" multiple times. Wonch appears to be holding something with his left hand, but it is not clear whether it is Hill's left arm or something else. Hill's right arm is completely out of the body camera's view.

The parties dispute whether Hill was resisting arrest. Hill says both of his arms were out and accessible by Wonch. Wonch asserts that Hill was physically resisting, pulling his left arm away from Wonch and tucking his right arm under his body. The parties agree that Wonch administered several knee strikes to Hill's back. (*Id.*, 15:05-15:29.)

Hill said "you're hurting me" multiple times. (*Id.*) Wonch swore at Hill. (*Id.*) Wonch cuffed Hill's left hand. (*Id.*, 15:30-15:36.) Hill's right arm is still off camera. Wonch shouted "give me your fucking arm," and brought Hill's right arm into view, against his back, and cuffed his right hand. (*Id.*, 15:46.) It is not clear whether Wonch struck Hill after cuffing his left hand.

---

[1] Citations to the body camera footage are given in the form of timestamps, formatted as MINUTE:SECOND.

Wonch turned Hill onto his back and instructed Hill to get up. (*Id.*, 16:30.) Hill struggled to do so and said that he couldn't. Normand came over and helped Wonch; they unsuccessfully tried to get Hill onto his feet. (*Id.*, 16:50-17:00.) Normand and Wonch dragged Hill outside face-up, down several steps. (*Id.*, 17:10-17:45.) Wonch let go, Normand continued to drag Hill, and Wonch told Normand he can leave Hill where he is; Hill said "thank you, guys." (*Id.*, 17:45-17:55.) There is snow on the ground and Hill is still face-up. (*Id.*, 17:55.) Hill appears to turn on his side, putting his face partially on the snow. (*Id.*, 18:20.) It is not clear who, but someone called medical personnel to come examine Lara (*id.*, 3:00); they arrived shortly after Hill was brought outside (*id.*, 18:45). An EMT helped Wonch lift Hill to his feet and walk him to the back of Wonch's squad car, placing him inside. (*Id.*, 19:45-20:38.) Shortly thereafter, Wonch administered a breathalyzer test. (Wonch Body Camera Footage 2, ECF No. 34-1, 1:00.) Hill's blood alcohol concentration was 0.214. (*Id.*, 1:20.)

Hill suffered serious injuries from the encounter. After being booked in jail, he began to complain about chest pain, which got worse over time and was exacerbated by lying down. (Notes Report, ECF No. 36-4, PageID.190.) Medical staff examined him. He had ten broken ribs, his back was broken in three places, and he had "air pockets around his lungs." (*Id.*) He was transferred to a hospital for emergency surgery on his back. (*Id.*)

## II. Standard

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted). A fact is material if it "might affect the outcome of the

suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289).

When considering the facts, the Court must accept the non-moving party's version of events as true and draw all inferences in the light most favorable to the nonmoving party. *Id.* However, an exception exists when police body camera footage "depict[s] all of the genuinely disputed facts." *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015) (internal quotation marks omitted). In such cases, courts must "'view [] the facts in the light depicted by the videotape[s].'" *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)). However, this rule only applies when the footage "quite clearly" or "blatantly" contradicts the nonmoving party's assertions of fact. *Scott*, 505 U.S. at 378, 380.

### III. Analysis

Defendants seek summary judgment on several interlocking grounds. First, they argue that Officer Wonch's use of force did not violate the Fourth Amendment, and even if it did, that he is entitled to qualified immunity because his use of force did not violate a clearly established right. Because Officer Wonch did not violate a right, or violate a clearly established right, Defendants argue that Forsyth Township cannot be liable under section 1983. For the same reasons, Defendants argue that Officer Wonch did not commit assault and battery. Finally, Defendants argue that Forsyth Township cannot be liable for the assault and battery claim because it is immune and not subject to vicarious liability.

### A. Count I: Excessive Force by Wonch

The question presented is whether Officer Wonch violated Hill's Fourth Amendment rights by using excessive force during the encounter. Once or twice, Hill seems to imply that the Eighth Amendment may also govern this case. (Opp'n Br., ECF No. 36, PageID.167-168.) He may simply be hedging, but the facts fall squarely within the Fourth Amendment. "When a free citizen claims that a government actor used excessive force during the process of an arrest . . . [courts] perform a Fourth Amendment inquiry[.]" *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015). The Eighth Amendment only provides protection post-conviction. *See id.* (citing *Hudson v. McMillian*, 503 U.S. 1,5, 7 (1992)).

The Fourth Amendment prohibits the police from using excessive force when making an arrest. *Rudlaff*, 791 F.3d at 641 (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). Delineating excessive from non-excessive force turns on whether the officer's actions are "objectively reasonable" under the totality of the circumstances. *Graham*, 490 U.S. at 397. "Throughout the inquiry, [courts] must carefully balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at risk.'" *Kent v. Oakland Cnty.*, 810 F.3d 384, 390 (6th Cir. 2016) (quoting *Graham*, 490 U.S. at 396). The reasonableness test must account for the need of police to make split-second decisions in rapidly changing situations and "judges from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Id.* (internal citations and quotation marks omitted).

An officer who used excessive force may be shielded from liability by qualified immunity. When analyzing qualified immunity, courts ask two questions: (1) whether the plaintiff suffered a violation of his or her constitutional rights; and (2) whether that right was clearly established at the time of the alleged violation. *Rudlaff*, 791 F.3d at 641. A right is clearly established only

when "every 'reasonable [officer] would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The plaintiff must cite to existing case law to show that the right in question was clearly established at the time of the alleged constitutional violation. *Rudlaff*, 791 F.3d at 643. Prior cases need not be "directly on point for a right to be clearly established, [but] existing precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotations omitted).

Hill claims Officer Wonch violated his Fourth Amendment rights three times during the arrest: (1) when Officer Wonch brought him to the ground; (2) when Officer Wonch struck him in the back multiple times; and (3) when Officer Wonch dragged him outside and left him lying on the snow for several minutes. Each incident will be analyzed separately.

### 1. The "body slam"

The first alleged violation occurred when Officer Wonch brought Hill to the ground after he charged Lara while refusing to submit to handcuffing. Hill notes that Officer Wonch has given inconsistent descriptions of his action, saying at different times that he pulled him to the floor, "assisted him down," or body-slammed him. (Pl.'s Opp'n Br., PageID.166 (internal citations omitted).) However characterized, Officer Wonch's use of force in bringing Hill to the floor was objectively reasonable.

The Sixth Circuit has laid out a "simple dichotomy" with respect to the use of force when making an arrest: greater force, such as tasing and knee strikes, may be used "[w]hen a suspect actively resists arrest"; such force is unconstitutional, however, "when a suspect does not resist, or has stopped resisting[.]" *Rudlaff*, 791 F.3d at 642. "Active resistance includes physically struggling with, threatening, or disobeying officers." *Id.* (internal quotation marks omitted). Even

"refusing to move your hands for the police to handcuff you" can be active resistance, "at least if that inaction is coupled with other acts of defiance." *Id.* (internal quotation marks omitted).

Here, not only was Hill actively resisting arrest, he was also trying to attack Lara. This is exactly the kind of split-second decision in a rapidly evolving scenario where the Court should not second-guess the action taken. The Court understands that there was a couch and a coffee table impeding Hill's immediate access to Lara.[2] But a nascent assault, where the assailant is also running away from an officer attempting an arrest, justifies using force to prevent an attack and secure that arrest. "What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992). Whether characterized as "assistance" or a body-slam, it was objectively reasonable for Officer Wonch to use the force he used to catch Hill and bring him to the ground.

### 2. Knee strikes

As mentioned, an officer may administer knee strikes to gain compliance and control over a person resisting arrest. *Rudlaff*, 791 F.3d at 642. Even then, knee strikes must cease once the person has stopped actively resisting arrest. *Id.* Using such force against a compliant person violates a clearly established right. *Id.*

In opposing summary judgment, Hill argues that he did not resist arrest after he was brought to the ground – that he was simply lying on the ground and that his arms were easily accessible for cuffing. Officer Wonch's body camera footage does not plainly contradict Hill's contention. From the footage, Officer Wonch appears to have at least a partial grasp on Hill's left hand and arm on

---

[2] Hill attempts to downplay the threat he posed to Lara, but the body camera footage shows that he closed considerable distance in a second or two, and that it took about two seconds for Officer Wonch to react and catch him. (Body Camera Footage 1, 14:55-14:57.)

several occasions while Wonch was striking Hill in the back. The position of Hill's left arm does appear to shift at certain points, but the footage does not make clear how that occurred – was it because Hill was moving his arm away in resistance, or did his arm move for some other reason, such as from being struck in the back?

Defendants also claim that Officer Wonch had to use "several knee strikes to get Hill to release his right arm, allowing the officer to complete the arrest." (Defs.' Br., ECF No. 34, PageID.110.) Hill's right arm is not in view of the camera during the relevant moments. Based on Hill's body position, it may be reasonable to infer that his right arm was tucked under his torso, as Defendants assert. However, Hill's assertion that his right arm was accessible for cuffing is not blatantly contradicted by Officer Wonch's body camera footage.

Thus, there is a genuine dispute of fact. And this dispute is material. If Hill *never* actively resisted after he was brought to the floor, then Officer Wonch was not permitted to administer any knee strikes. If Hill actively resisted at first, but at some later point submitted, then Officer Wonch was prohibited from using knee strikes after that point. This is an issue that must be submitted to a jury. The Court cannot enter summary judgment here.

### 3. Dragging

Finally, Hill claims that Officer Wonch used excessive force when he dragged him outside and left him lying in the snow for a few minutes. He says Officer Wonch's actions implicated "an arrestee's right to medical attention." (Opp'n Br., PageID.168.) It was not clear that Hill needed medical attention when he was dragged outside. The body camera footage does not show any wounds or bleeding. As it turns out, Hill may have been struggling to walk because of his broken back. But that was not apparent to Officer Wonch at the time. Hill was also noticeably intoxicated.

From the perspective of a reasonable officer, Hill may have been too drunk to stand and walk, or may have simply refused to do so as a passive means of resisting arrest. Officer Wonch's

body camera does not show Hill being dragged roughly, and he was only brought down a step or two. He was brought outside, face-up. The footage indicates that Hill later turned over, causing part of his face to rest on the snow. He was outside for a few minutes while Officer Wonch waited for the medical personnel to park their truck, at which point one of them helped Wonch escort Hill into the squad car. Officer Wonch's conduct in this regard was objectively reasonable. Hill's Fourth Amendment rights were not violated when he was dragged and briefly placed outside.

### B. Count II: *Monell* Claim Against Forsyth Township

Municipalities may be held liable for constitutional violations through section 1983. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). However, municipalities cannot be vicariously liable under section 1983 for actions by officials. *Canton v. Harris*, 489 U.S. 378, 385 (1989). Rather, a *Monell* claim only lies "where the municipality *itself* causes the constitutional violation at issue." *Id.* (emphasis added). Hill bases his *Monell* claim on Forsyth's alleged failure to train its police on the lawful use of force. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (*Monell* claims may be based on failure to train).

A *Monell* claim "is at its most tenuous where [the] claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Here, Defendants stake their motion for summary judgment on a simple premise: there is no valid failure-to-train claim where no constitutional violation has occurred, or where the right in question was not clearly established at the time of the alleged violation. *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017) (no *Monell* liability if the right at issue has not been clearly established).

As explained above, there is a genuine dispute of material fact as to whether Officer Wonch violated a clearly established right when he used knee strikes against Hill while attempting to arrest him. Assuming Hill proves his case against Officer Wonch in this regard, then Forsyth could face *Monell* liability for the knee strikes. Because Hill's rights were not violated when he was tackled

or dragged outside, those incidents cannot give rise to a *Monell* claim against Forsyth. Summary judgment will be granted in part on Count II.

### C. Count III: Assault and Battery

#### 1. Against Forsyth Township

Defendants argue that, under Michigan law, governmental entities cannot be vicariously liable for the torts of its employees and agents. In Michigan, a municipality "cannot be held vicariously liable for torts of its police officers committed during the course of an arrest[.]" *Ross v. Consumers Power Co.*, 363 N.W.2d 641, 664 (Mich. 1984) (citing *Sherbutte v. Marine City*, 130 N.W.2d 920 (Mich. 1964)). Hill offers no rebuttal to this argument. *Ross* squarely controls: Forsyth cannot be vicariously liable for the intentional torts allegedly committed by Officer Wonch. The Court will grant summary judgment in favor of Forsyth on Count III.

#### 2. Against Officer Wonch

As with the *Monell* claim, Defendants assert that Officer Wonch cannot be liable for assault and battery because he used reasonable force or did not violate a clearly established right.

Police can be liable for assault and battery when they use "more force than necessary in effecting an arrest." *White v. City of Vassar*, 403 N.W.2d 124, 130 (Mich. Ct. App. 1987). Police officers are entitled to governmental immunity from suit for intentional torts if: (1) the challenged acts "were undertaken during the course of employment and the employee was acting or reasonably believed that he was acting, within the scope of his authority"; (2) the employee acted with good faith, or without malice; and (3) "the acts were discretionary, as opposed to ministerial." *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008). Thus, the rule from *City of Vassar* is a threshold that must be cleared before reaching the *Odom* test. When making an arrest, a police officer, even acting without good faith, cannot be liable for assault and battery if he did not use more force than necessary in effecting that arrest.

Here, Officer Wonch was taking discretionary action in the course of his employment because he was making an arrest. Thus, there are two relevant considerations: (1) whether Officer Wonch used more force than necessary, and (2) if so, whether he acted with malice. For the reasons stated earlier in this opinion, the Court finds that Officer Wonch did not use more force than necessary when he brought Hill to the ground and later dragged him outside. He cannot be liable for assault and battery on those actions. However, there is a genuine dispute of material fact as to whether Officer Wonch used more force than necessary in administering knee strikes, as there is a factual dispute about whether and when Hill submitted to arrest. The question then becomes whether Officer Wonch used knee strikes out of malice. Considering the aggressive language he used while striking Hill, who may or may not have been resisting, the issue of good faith is one that must be resolved by a jury. The Court will not grant summary judgment with respect to the knee strikes.

Hill argues that Officer Wonch was not acting in the course of his employment because he "refuse[d] to make medical assessments, intentionally continue[d] to beat someone in response to cries of pain and hurt, or intentionally le[ft] someone facedown in a snowbank." (Opp'n Br., PageID.170.) This is incorrect. Michigan employs a three-prong test to determine whether an action was made in the course of employment in this context: "'(1) the existence of an employment relationship, (2) the circumstances of the work environment created by the employment relationship, including the temporal and spatial boundaries established, and (3) the notion that the act in question was undertaken in furtherance of the employer's purpose." *Niederhouse v. Palmerton*, 836 N.W.2d 176, 180 (Mich. Ct. App. 2013) (internal quotation marks omitted).

It is undisputed that Officer Wonch was employed by the Forsyth police on the date in question. It is also undisputed that an on-duty police officer would go to private citizens' houses

11

to investigate crimes and conduct arrests. Therefore, Hill's argument appears to rest on the idea that an employee who breaks the rules in carrying out their job necessarily does so outside the course of his or her employment. But "even if an act is *contrary* to an employer's instructions, it may be within the course of employment if 'the employee accomplished the act in furtherance, or [in] the interest, of the employer's business." *Id.* at 181. Part of a police department's business is to make arrests. Officer Wonch's actions were taken in furtherance of that purpose. He was acting in the course of his employment. As explained above, the sole issue is whether he issued knee strikes in good faith.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment in part. Defendants cannot be liable for Officer Wonch's actions in bringing Hill to the ground and later dragging him outside. Under Counts I and III, Officer Wonch may be liable if he used knee strikes at any point after Hill stopped actively resisting arrest, which is a genuine dispute of material fact. Forsyth Township may be liable for the knee strikes under the *Monell* claim stated in Count II. Count III will be dismissed against Forsyth Township because it cannot be vicariously liable for Officer Wonch's actions. An order will enter consistent with this opinion.

Dated:  March 10, 2021               /s/ Hala Y. Jarbou
                                     HALA Y. JARBOU
                                     UNITED STATES DISTRICT JUDGE