IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD J. HILL, | ) | |
| | ) | Case No. 2:19-cv-159-HYJ-MV |
| Plaintiff, | ) | |
| | ) | U.S. District Judge: |
| v. | ) | Hon. Hala Y. Jarbou |
| | ) | |
| JUSTIN WONCH, and | ) | U.S. Magistrate Judge: |
| TOWNSHIP OF FORSYTH, | ) | Hon. Maarten Vermaat |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION OF DEFENDANT FORSYTH TOWNSHIP'S SECOND MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Forsyth Township's Motion and Brief seeking summary judgment provides a detailed dissertation on the framework of *Monell* claims in § 1983 actions. But it fails to support the granting of summary judgment on the issue. Plaintiff raises jury questions on his *Monell* claims for Forsyth Township's policy of inadequate training and its ratification of Officer Wonch's illegal actions. Consequently, Forsyth Township's Motion should be denied.

**FACTS**

Defendant Justin Wonch—a police officer for Forsyth Township, Michigan—severely assaulted Richard Hill on the night of March 22, 2019. This beating occurred while Officer Wonch was investigating a domestic violence call. For Mr. Hill's part, he accepted responsibility for his actions that night and served out a sentence. Needless to say, Mr. Hill's sentence did not involve being severely beaten by a police officer. Or having his lungs punctured, along with

numerous ribs and two vertebrae fractured requiring emergency surgery. Or being hospitalized for two months. The facts of this assault are familiar to the Court. Plaintiff refers the Court to PageID.157-PageID.163 for a discussion of the assault giving rise to his Complaint.

Since the Court denied Defendants' Motion for Summary Judgment in part, both Defendant Wonch and Forsyth Township Police Chief Brian Kjellin gave depositions. These depositions support the denial of Forsyth Township's Motion on *Monell* issues.

*Forsyth Township's Response to the Assault of Mr. Hill*

The FTPD Use of Force Policy requires that whenever an officer like Defendant Wonch uses force in the course of his duties, he must report the use of force to the shift supervisor "as soon as possible." (**Defendant's Exhibit A—FTPD Use of Force Policy, p. 3, PageID.287**).[1] The policy also requires that officers complete "the Department use of force report." *Id.* As to the incident in question, if Officer Wonch even prepared a report, it was not retained by FTPD. In his deposition, Chief Kjellin was asked about whether Officer Wonch prepared a report. He testified that he did not recall whether such a report existed, even though he conceded that the department keeps such records. (**Exhibit 1—Chief Kjellin's Deposition, pp. 53-54**).[2] Chief Kjellin was asked to search for the report, agreed he would, and if it existed, to provide it to his counsel to be provided to Plaintiff's counsel. *Id.* Defendants' counsel agreed the report would be produced if found, but none has been produced. *See id.* Despite the written policy of reporting uses of force at FTPD, the department's actual policy involves doing the opposite.

---

[1] This exhibit will be admissible at trial as it is relevant to Plaintiff's claims against FTPD and constitutes an admission of a party opponent and is therefore not hearsay. See F.R.E. 802(d)(2).

[2] Chief Kjellin's testimony will be admissible at trial as he will either be called by the defense or subpoenaed by Plaintiff. His deposition testimony will be admissible for impeachment purposes if he deviates from his prior testimony.

The incident giving rise to this case occurred on March 22, 2019. Defendant Wonch resigned from the FTPD in April of 2019. (**Exhibit 2—Officer Wonch's Deposition, p. 14**). He subsequently reapplied and was reinstated as a FTPD officer. However, before his resignation, the bodycam video was submitted to the chief (at the time, Chief Fitzgerald) for review. (**Exhibit 1, p. 32**). Whether or not Chief Fitzgerald even reviewed the video is unknown to the FTPD. *Id*. In 2019, Chief Kjellin was FTPD's detective, and would have been involved with any internal affairs/personnel investigations. *Id*. However, Chief Fitzgerald never discussed the incident with (then) Detective Kjellin. *Id*. at 31.

Chief Kjellin went to reinterview witnesses to the incident three days after Mr. Hill was assaulted. He interviewed eyewitnesses Vicky Lara and Timothy Normand. In his deposition, he testified that reinterviewing witnesses was standard protocol for domestic violence calls. *Id*. at 29-30. When Chief Kjellin discussed the incident with Ms. Lara, she informed him that Mr. Normand wished to seek charges against Officer Wonch, presumably for his conduct towards Mr. Hill. (**Exhibit 3—Chief Kjellin's Bodycam-Recorded Interview of Lara and Normand, 10:20:29-10:20:34**).[3,4] However, Ms. Lara, who has a tendency to jump around in conversations, changed the subject. Chief Kjellin did not redirect her and asked no follow-up/clarification questions concerning Officer Wonch's conduct. *Id*., 10:20:34-10:32:21 (Lara and Normand reinterviews). Immediately after reinterviewing Ms. Lara, Chief Kjellin reinterviewed Mr. Normand. *Id*., 10:24:40-10:32:21. In doing so, he made no inquiry about Officer Wonch's

---

[3]     **Exhibit 3** will be submitted to the Court for filing with the Judge's Copy.

[4]     Note: time references in **Exhibit 3** in this Brief refer to the time stamp in the video itself, not the elapsed time of the recording.

conduct/assault on Mr. Hill and did not follow up on Ms. Lara's comment that Mr. Normand wished to seek charges against Officer Wonch. *Id.* Specific, near leading questions were asked concerning the acts of Mr. Hill. By contrast, no specific questions at all were asked about Officer Wonch's conduct. *Id.* In other words, Chief Kjellin avoided any inquiry whatsoever into the conduct of Officer Wonch on the night of March 22, 2019, despite the fact that FTPD was aware that an incident had occurred and a citizen had disclosed possible criminal conduct on the part of one of its officers. By way of contrast, private investigator (and retired Michigan State Police Detective) Walley Helmila asked Mr. Normand direct, non-leading questions about Officer Wonch's conduct towards Mr. Hill. This recorded interview is already part of the record in the case. (Exhibit 3 to Plaintiff's Response and Brief in Opposition of Defendants' [First] Motion for Summary Judgment, ECF No. 36; PageID.187). The recorded interview is illustrative of the information Chief Kjellin likely would have received if he had chosen to investigate Officer Wonch's conduct towards Mr. Hill.

FTPD's Internal Investigations Policy (**Exhibit 4**) was produced at Chief Kjellin's deposition. The policy's "Purpose" section states that "[b]ehavior deviating from accepted standards and practices will not be tolerated." (**Exhibit 4, p. 1**). However, the investigation of Officer's Wonch's conduct towards Mr. Hill makes clear that his numerous deviations from FTPD's standards were ratified by his supervisors, who turned a blind eye to his behavior and ignored FTPD's own requirements to investigate excessive force incidents like this. FTPD's Internal Investigations Policy states:

> [i]t is the policy of this department to accept, document, review, and investigate instances of alleged misconduct of any employee of the department. Allegations of misconduct ***will be*** investigated regardless of whether initiated by citizen complaint, other external

4

> agencies, internally generated, or discovered through the internal review and administrative processes of the department.

*Id.* at 1 § 2 (emphasis added). However, here, Chief Kjellin (who became interim chief shortly after this incident) chose not to investigate the reports of misconduct by Officer Wonch, even when he learned that a citizen wanted to pursue charges against him for the assault on Mr. Hill.

Violations of FTPD's ***written policies*** by Officer Wonch were identified in Chief Kjellin's deposition. Similarly, Chief Kjellin conceded that knee strikes consistent with Plaintiff's excessive force allegations would be objectively unreasonable. These violations show fact questions on whether the practiced policies of the FTPD were different from its written policies:

- Screaming at a subject that he is a "fucking piece of shit" is not going to de-escalate a situation, and is not in keeping with the standard of the FTPD. (**Exhibit 1, p. 27**).
    - Chief Kjellin testified similarly as to Officer Wonch calling Mr. Hill a "stupid fuck." *Id.* at 27-28.

- When lodging Mr. Hill at the jail, Officer Wonch provided no information on his use of force, what injuries may have been caused, or the lack of first aid provided to Mr. Hill, even though it was required by department policies. *Id.* at 46.

- Chief Kjellin was not brought into the internal investigative process by then-Chief Fitzgerald, which is what should have happened, as the chief's designee. *Id.* at 32 & 50. Chief Kjellin was made interim chief of the FTPD three to five months after this incident. *Id.* at 10. Yet there is no evidence of any formal investigation whatsoever by Chief Kjellin or his predecessor, and Officer Wonch was not subject to discipline. *See id.* at 32-33 & 52.

- Using knee strikes on a subject who is not actively resisting is objectively unreasonable. *Id.* at 25.

- Using knee strikes on a passively resisting subject is objectively unreasonable. *Id.* at 25-26.

- Using knee strikes on a nonresistant subject is objectively unreasonable. *Id.* at 26.

Forsyth Township made no effort to investigate this incident, despite a wealth of evidence that Officer Wonch had acted illegally by assaulting Mr. Hill. This shows the FTPD's ratification of Officer Wonch's illegal conduct.

### *Officer Wonch's Training*

There are factual discrepancies concerning the extent and sufficiency of the training policies of the FTPD. In Defendant Wonch's deposition, he was asked about trainings he had to do. He did not identify any trainings concerning the use of force. (**Exhibit 2, pp 20-22**).[5] In Chief Kjellin's deposition, he claimed that Officer Wonch had to complete use of force training, but that it was only covered in a perfunctory fashion in the review of the deadly force policy as part of the department's annual firearms training/qualification. (**Exhibit 2, p. 35**). Chief Kjellin also testified that the only required trainings for the FTPD are "you know, the 900-hour police academy, 60 credit hours to an associates degree. And then the mandatory trainings are standardized field sobriety testing, the DataMaster and legal update are the absolute mandatories." *Id.* at 36. Tellingly, in Officer Wonch's deposition, he conceded that he had ***never even read*** the Michigan Commission on Law Enforcement Standards ("**MCOLES**")'s requirements of officers like himself. (**Exhibit 2, p. 82**). MCOLES is the licensing agency for all police officers in the State of Michigan and creates standards for law enforcement activities. M.C.L. § 28.609(2)(a) (delegating rule promulgation to MCOLES for licensing standards and training requirements); Mich. Admin. Code R. 28.14301(b)-(k) (definitions section for MCOLES

---

[5] This exhibit will be admissible at trial as it is relevant to Plaintiff's claims against FTPD and constitutes an admission of a party opponent and is therefore not hearsay. See F.R.E. 802(d)(2).

rules governing training programs: note that all training entities and curriculum definitions entail being "commission [MCOLES] approved.)" In the past, FTPD officers attended an advanced training at Northern Michigan University, which went on for a week, and covered topics like the appropriate use of force. (**Exhibit 2, p. 35**). However, Officer Wonch had not attended since 2014. *Id.* at 36. This incident demonstrates the grave consequences of Forsyth Township's failure to train Officer Wonch.

## ARGUMENT

I. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the Court must examine "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in deciding whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c); internal quotations omitted). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material fact when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l. Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289; internal quotations omitted).

When analyzing the facts, the nonmovant's version of events must be considered to be true and all inferences should be drawn in the light most favorable to the nonmoving party. *Id.* The facts set forth by Plaintiff must be relied upon unless blatantly refuted by incontrovertible evidence, like a video recording. *Scott v. Harris*, 550 U.S. 372, 378 (2007). This is consistent with the axiom that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255.

## II. PLAINTIFF'S *MONELL* CLAIMS AGAINST FORSYTH TOWNSHIP CREATE VIABLE JURY QUESTIONS.

### A. *Establishing Municipal Liability Under Monell*

"A municipality may not be held liable under § 1983 on a *repondeat superior* theory—in other words, *solely* because it employs a tortfeasor." *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978); internal quotations omitted). Rather, "a plaintiff must show that through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (internal quotations omitted). This is shown by a municipality had a "policy or custom" that caused violations of a plaintiff's rights. *Monell*, 436 U.S. at 694.

The ways by which a plaintiff may establish a *Monell* violation was discussed by the 6th Circuit in *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 880 (6th Cir. 2020):

> [t]here are four methods of proving a municipality's illegal policy or custom: the plaintiff may prove
>
> (1) the existence of an illegal official policy or legislative enactment;
>
> (2) that an official with final decision making authority ratified illegal actions;

8

>(3) the existence of a policy of illegal training or supervision; or

>(4) the existence of a custom of tolerance or acquiescence of federal rights violations.

(Internal quotations omitted; line spacing added for readability).

Here, Plaintiff raises questions of material facts sufficient to reach a jury on two of the four grounds: (1) ratification; and (2) illegal training or supervision. Each is addressed in turn.

### B. *Forsyth Township Ratified Officer Wonch's Illegal Actions.*

Here, Forsyth Township ratified Officer Wonch's illegal actions against Mr. Hill by failing to meaningfully investigate uses of force. A municipality may ratify officers' excessive force by failing to meaningfully investigate uses of force by its officers. *Wright*, 962 F.3d 882.

Forsyth Township's failure to meaningfully investigate this incident gives rise to *Monell* liability under a ratification theory. In *Marchese v. Lucas*, 758 F.2d 181, 188-189 (6th Cir. 1985), the 6th Circuit held that a municipality's failure to investigate an excessive force incident gave rise to a valid *Monell* ratification claim.

In *Marchese*, plaintiff Salvatore Marchese stopped his car at a city park in Westland, Michigan to shoot up some heroin. *Id.* at 182. While he was still parked there, two Wayne County Sheriff's Deputies stopped to investigate. When he was asked to step out of his car he pulled a gun on the deputies. A deputy snatched the gun and the officers, with the assistance of a passing civilian carrying a golf club, removed Marchese from his car. He was arrested. He was then taken to a road patrol station in Westland and was beaten by deputies and put in a cell. He was again beaten in jail that night.

Attorney Ken Mogill observed his injuries from the beatings when he met with him on the underlying charges the next day. *Id.* When Marchese and Mogill appeared in district court for arraignment, the judge observed Marchese's injuries from the beatings and ordered the deputy present at the arraignment to initiate an investigation. *Id.* at 184. No investigation occurred. *Id.* Mr. Marchese was convicted of felonious assault and served a prison sentence. *Id.* at 182, n. 1. He filed a § 1983 claim against the sheriff and Wayne County in the U.S. District Court for the Eastern District of Michigan.

The case went to trial and a judgment of $125,000 was entered based on the jury's verdict. *Id.* at 182. Defendants appealed. The 6th Circuit affirmed. In doing so, it held that the failure to investigate the beatings Marchese received after his arrest and later that night were actionable under § 1983 under a *Monell* ratification theory. *Id.* at 188-189.

Here, the lack of investigation is analogous to that in *Marchese*. Forsyth Township had a policy and means of conducting internal investigations. *See e.g.*, (**Exhibit 4**). No such investigation of Officer Wonch's conduct was performed. Chief Kjellin testified that his reinterviewing of witnesses was standard for a domestic violence case, not the result of the severe beating Mr. Hill received. (**Exhibit 1, pp. 29-30**). Like *Marchese*, Officer Wonch's actions were discovered by a third party (Marquette County Sheriff's Deputy Bonifas) who noticed the severity of Mr. Hill's injuries, heard his comments that Officer Wonch beat him up, and got him to the hospital where he underwent emergency spinal surgery. PageID.189-PageID.190. No use of force report was created by FTPD. See (**Exhibit 1, pp. 53-54**). No internal investigation was performed, despite the involvement of Chief Kjellin who, at that time, was the Chief's designee for internal investigations. *Id.* at 32, 50 & 52. When he reinterviewed witnesses, Chief Kjellin was

specifically informed of a citizen wishing to pursue charges against Officer Wonch for his assault on Mr. Hill and he chose to (1) not investigate the issue at all; and (2) lead the subjects of his interviews away from Officer Wonch's improper conduct, focusing them on Mr. Hill's behavior. Still, nothing was done in terms of internal investigation. Here, Forsyth Township performed no meaningful investigation of this incident whatsoever. This should be a jury question under *Monell*.

Further, jury questions are created by a department's refusal to acknowledge any inappropriate force incident in a department's history. *Id.* In *Wright*, the 6th Circuit held that an agent of the Euclid Police Department's testimony that he had never heard of an instance of excessive force by one of its officers created a jury question on the city's ratification of illegal actions by officers. *Id.* Such is the case here. In answers to interrogatories (**Defendant's Exhibit B, PageID.289-PageID.295**), Forsyth Township stated that there were no credible civil rights complaints made against the department since 1990. *Id.*, p. 3 ¶ 5, PageID.291. This too supports denial of Forsyth Township's Motion for Summary Judgment.

### C.     Forsyth Township Had a Policy of Inadequate Training

Unlike failure-to-supervise claims, failure-to-train claims do not require a showing of prior instances of unconstitutional conduct. In a failure-to-train allegation, "a single instance of unconstitutional conduct can give rise to a failure-to-train claim when the natural consequence of the municipality's training regimen is that officials will violate constitutional rights." *Wright*, 962 F.3d at 881. Whereas, for a failure-to-supervise claim, "prior instances of unconstitutional conduct" must be shown. *Id.*

Forsyth Township's argument for dismissal fails. In its brief, Forsyth Township argues that Plaintiff's *Monell* claim fails because prior instances of unconstitutional conduct have not been identified. Defendants' Br., PageID.282. However, the absence of prior instances of unconstitutional conduct does not result in the failure of Plaintiff's failure-to-train allegations. Here, Officer Wonch was inadequately trained. Annually, he was required to complete the following trainings:

- Speed radar training (inapplicable).

- A legal update done by a prosecutor (inapplicable).

- Mandatory firearms qualification training (inapplicable).

    - Note: the first part of the firearms training includes a review of the FTPD deadly force policy, which includes a "paragraph" on the use of force generally, which Chief Kjellin described as "fairly small" in his deposition (inapplicable). (**Exhibit 1, p. 38**).

- Standardized field sobriety testing (inapplicable).

- DataMaster training (inapplicable).

(**Exhibit 1, pp. 35-36**). Officer Wonch's testimony as to his required trainings is thinner still. *See* (**Exhibit 2, pp. 20-22**). Further, Officer Wonch's complete disregard/ignorance of the MCOLES standards and nearly nonexistent training are a natural consequence of Forsyth Township's lack of officer training. The natural consequence of which is the violation of an individual's constitutional rights. Here, the violation of Mr. Hill's constitutional rights resulted in severe injuries, prolonged hospitalization, and extensive medical expenses.

## **CONCLUSION**

Plaintiff's *Monell* allegations should be questions for the jury because Forsyth Township ratified Officer Wonch's conduct in assaulting Mr. Hill and its training of Officer Wonch fails under *Monell* and its progeny. There are genuine issues of material fact that require Forsyth Township's Motion to be denied.

        Respectfully submitted,

        **Numinen, DeForge & Toutant, P.C.**

        s/ Phillip B. Toutant
        _____
        PHILLIP B. TOUTANT (P72992)
        Attorney for Plaintiff
        105 Meeske Ave.
        Marquette, MI 49855
        (906) 226-2580
        phillip@numinenlaw.com