UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD J. HILL,

    Plaintiff,

v

JUSTIN WONCH, and
TOWNSHIP OF FORSYTH,

    Defendants.
_____/

U.S. District Judge:
  Hon. Hala Y. Jarbou

U.S. Magistrate Judge:
  Maarten Vermaat

Case No: 2:19-cv-159

| | |
|---|---|
| Phillip B. Toutant (P72992)<br>Karl P. Numinen (P46074)<br>NUMINEN DEFORGE & TOUTANT, P.C.<br>Attorneys for Plaintiff<br>105 Meeske Avenue<br>Marquette, MI 49855<br>(906) 226-2580 | M. Sean Fosmire (P31737)<br>KITCH DRUTCHAS WAGNER<br>  VALITUTTI & SHERBROOK<br>Attorneys for Defendants<br>1440 W. Ridge Street, Ste. C<br>Marquette, MI 49855-3199<br>(906) 228-0001 |

**DEFENDANT FORSYTH TOWNSHIP'S REPLY BRIEF**

    It is necessary for the court to consider some of the testimony given by Brian Kjellin in the course of his deposition in order to avoid the plaintiff's effort to mischaracterize his testimony. Brian Kjellin is the current Chief of Police for Forsyth Township, but in March 2019 he did not hold that position. He was a detective in the department, working under Chief Fitzgerald, at that time.

    In answers to interrogatories on behalf of the Township, he stated that there had been no complaints made by citizens directed against Officer Wonch at any time before the March 2019 incident involved in this case.

> You say during your time working with Officer Wonch, and later as a supervisor, you do not believe there are any complaints of misconduct against him.  Any such complaint would be documented and put in his personnel file and no such complaints exist.  Roughly that's your response; true?

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
1440 W. RIDGE STREET
SUITE C
MARQUETTE, MICHIGAN
49855-3199

(906) 228-0001

MAR01:83981.1

> A   Correct.
> Q   Has that changed in any way to today's date?
> A   As far as him having any complaints in his personnel -- no, he has none. (p. 55)

It is true that he stated that there was no investigation done of the Hill incident at issue in this case, to his knowledge, but as we will see below, that is because **there was never any report of any claim of wrongdoing** on the part of the arresting officer.

> Q   Was there any reporting of the incident involving Mr. Hill on March 22nd, 2019, to any other government agencies?
> A   Not to my knowledge.
> Q   Okay.  Not to MCOLES, for example?
> A   Correct; no.
> Q   And to your knowledge there was no internal investigation conducted?
> A   To my knowledge, no.  Again, I don't know what Chief Fitzgerald did, but I know he didn't involve me in it.
> Q   You know he did not involve you in that?
> A   If there was an internal investigation, as the detective I wasn't brought into that. (at p. 52)

**Knee strikes**

Plaintiff's responsive brief misrepresents the testimony given by Chief Kjellin in the course of his deposition with respect to the use of force and, in particular, the use of knee strikes.

> Similarly, Chief Kjellin conceded that knee strikes consistent with Plaintiff's excessive force allegations would be objectively unreasonable.
>
> Using knee strikes on a subject who is not actively resisting is objectively unreasonable. Id. at 25.
>
> Using knee strikes on a passively resisting subject is objectively unreasonable. Id. at 25-26.
>
> Using knee strikes on a nonresistant subject is objectively unreasonable. Id. at 26.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
1440 W. RIDGE STREET
SUITE C
MARQUETTE, MICHIGAN
49855-3199

(906) 228-0001

That listing misleadingly describe the testimony given by Chief Kjellin. His testimony recognizes that **knee strikes are an accepted technique** used by police officers to gain compliance when dealing with a noncompliant subject. He did acknowledge that knee strikes or other compliance techniques would not be proper, and would be objectively unreasonable, if the subject was non-resistant or not actively resisting arrest. No law enforcement officer would say otherwise. But the suggestion that he testified that they are improper is simply false.

> **You agree that using knee strikes when a subject is not actively resisting would be objectively unreasonable force; correct?**
>
> I believe that knee strikes should only be used as a compliance technique to gain a lawful arrest and gain compliance.
>
> **...My question is if a subject is not actively resisting, then the use of a knee strike would be objectively unreasonable; true?**
>
> Correct; yes. I'm sorry. I misunderstood your question.
>
> **That's all right. Similarly, using knee strikes on a subdued subject is objectively unreasonable; correct?**
>
> Subdued and still not cooperating or subdued -- just 100 percent -- so there -- to me there's a couple different levels there.
>
> **Someone who's not resisting at all, any force would be improper; right?**
>
> Not necessarily.
>
> **If they're not resisting at all, I mean, any force would be improper other than putting their hands in cuffs and helping them into the car; right?**
>
> I think that we look at the framework of it, though. When you say someone who is not resisting at all, you still have the level of somebody who may be clenching a fist, looking like they may be ready to assault you. I think you still have that level, too. So, you know, on the framework of the force continuum you have the plus one rule which says, "I can always go up one and then come back down as needed within the continuum."
>
> So there is that lowest level in the continuum which says, you know, somebody might be taking a defensive posture, clenching a fist. They're not necessarily physically or actively resisting, but they are showing that they're -- there's signs that they could be in

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
1440 W. Ridge Street
Suite C
Marquette, Michigan
49855-3199

(906) 228-0001

       that potential gap to resist and we can always go one step above in that continuum. (pp. 25-26)

**The ratification claim**

Plaintiff's "ratification" argument must be rejected by this Court, as it ignores the requirement under *Monell* that a policy or custom by the municipality must be shown to have caused the injury sustained by the plaintiff.

It is a matter of logic and common sense that only the policies or customs of a police department as they existed **before the incident** in question can be examined to determine whether the department's policies caused the injury to the plaintiff. Activities that occurred after the injury was sustained would not be relevant in virtually all cases.

Recall that the primary rulings made by the Court in *Monell*, 436 U.S. at 694, were:

1 - A municipality may not be sued on a theory of *respondeat superior* for the wrongful acts of its employee.

> "We conclude, therefore, that a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents."

2 - It can, however, be sued for an injury if it can be shown that the injury was **caused by** the application of a policy or custom that the municipality had previously adopted.

> "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

And of course an injury caused by excessive force can only be "inflicted" by a policy or custom that **predated the incident** that caused the injury. A failure by the arresting officer to fill out a Use of Force report after the incident in question, as one example, simply has no relevance on this issue.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
1440 W. RIDGE STREET
SUITE C
MARQUETTE, MICHIGAN
49855-3199

(906) 228-0001

Plaintiff tries to fit this case into the mold of *Marchese v Lucas*, 758 F. 2d 181 (6th Cir. 1985), but he is unable to do so. *Marchese* involved acts of outrageous wrongdoing by sheriff's deputies, including beating a prisoner in his jail cell (when he obviously was not resisting anything and did not pose a threat to anyone), with other deputies listening and laughing, doing nothing to intervene, after which the sheriff's department took affirmative steps to cover up the incident. The testimony given by all deputies present was that no such incident had occurred at all.

It is not necessary to revisit in detail the dramatic events that gave rise to the claims in *Marchese*. It is instructive to note that one major factor predominated in that case. On the day after Marchese was beaten, he appeared in district court with his attorney, and his black eye, swollen lip, and blood on his shirt were very visible. The district court judge before whom he had been brought, horrified by his condition, ordered the Sheriff's Department to investigate and to report to the court. **The Sheriff failed to do anything to comply**, and this non-compliance was found by the Sixth Circuit to be very telling:

> The state District Court Judge, observing Marchese's condition, ordered the Sheriff's representative present at the hearing to initiate an investigation of who and what had produced his injuries.
>
> The Sheriff's subsequent failure to order and direct an investigation which disclosed exactly who were the perpetrators of these brutal violations to the U.S. Constitution and to administer censure and punishment served to confirm the existence of an unstated "policy" of toleration of illegal brutality.

Properly understood, *Marchese* does not really stand for a rule that recognizes after-the-fact "ratification" of wrongful conduct by a failure to investigate. Instead, its holding was that the Sheriff's Department's failure to conduct an investigation under the facts of that case, particularly after a judge had directly ordered it to investigate, could properly been regarded as

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
1440 W. RIDGE STREET
SUITE C
MARQUETTE, MICHIGAN
49855-3199

(906) 228-0001

evidence confirming that it did have – before the incident causing injury – a "policy or custom" of permitting or condoning acts of egregious violence directed against jail inmates.

It is helpful to review how a later case applied the court's analysis as used in the *Marchese* decision. In *Tompkins v. Frost*, 655 F.Supp. 468 (E.D. Mich. 1987), the District Court noted:

> Although an action exists for inadequate police training, two of its elements are very severe. First, mere negligence in training is insufficient; **the failure must be so gross in nature that future police misconduct is substantially certain to result**. *Hays*, supra. Second, even when gross negligence is demonstrated, **a strong causal link must be established** between the inadequacies in the training or supervision and the specific wrongdoing which injured the plaintiff.

With respect to the concept of "ratification" by failure to investigate an incident, the court noted

> Plaintiff has asserted in count V that the county ratified the unlawful actions of the sheriff's deputies by failing to undertake an investigation after the alleged excessive force was reported to an assistant prosecuting attorney. The assertion of this ratification by failure to investigate claim is apparently based on the sixth circuit decision of *Marchese v. Lucas*, where the court held that Wayne County, acting through its sheriff's department, had ratified the misconduct of deputies by failing to investigate. Plaintiff broadly reads *Marchese* as holding that any failure to investigate a report of police misconduct creates municipal liability and **in effect, by-passes the requirements of *Monell***. [citations omitted]
>
> Such an interpretation of *Marchese* is illogical. **Wrongful conduct after an injury cannot be the proximate cause of the same injury.** Moreover, *Monell* forbids a finding of county liability except where the misconduct is pursuant to an official policy or custom and is also the "moving force" behind the plaintiff's injury. The misconduct by the county must also be either intentional or at the least, grossly negligent. The Fourteenth Amendment does not provide a remedy for negligence.

The court considered how the principles that had been applied in other cases would guide its decision:

Kitch Drutchas Wagner Valitutti & Sherbrook
ATTORNEYS AND COUNSELORS
1440 W. Ridge Street
Suite C
Marquette, Michigan
49855-3199

(906) 228-0001

6

> The strength of the inference which could be drawn from a failure to investigate would vary from case to case **depending on the nature of the notice given to the responsible person** in the *Monell* entity and whether that person intentionally or recklessly failed to take appropriate action. By analogy to the Supreme Court's decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), a willful failure to investigate by a county policymaker would create a very strong inference that the underlying incident of misconduct was pursuant to a policy or custom. In such a case, the failure to investigate would also be pursuant to a policy but would lack any proximate cause to the previously inflicted injury. To the contrary, **a merely negligent or inadvertent failure to investigate would have little, if any, probative value as to whether a policy previously existed.**
>
> As presented in this case, *Marchese* could allow an inference that the county's failure to train and supervise its officers was a pre-injury policy from the county's post-injury failure to investigate. However, the inference cannot be made here for several reasons. First, the only notice to the county of the misconduct were the remarks of a criminal defense attorney to an assistant prosecutor during plea negotiations. Such a claim, made in the context of attempting to bargain away criminal charges, is not of the type that must necessarily lead to an investigation. **Plaintiff made no formal, or informal, complaint of police brutality…**
>
> Third, the record is devoid of evidence that the failure of the county to investigate was willful, reckless or grossly negligent. Plaintiff's proofs barely establish a genuine issue of fact that the county received notice and entirely fail to create a question of fact beyond the notice.
>
> Accordingly, the court finds that no genuine issue of material fact exists as to the alleged failure to investigate claim. [emphasis added]

As was the case in *Tompkins*, plaintiff Hill in this case did not at any time file a complaint of police brutality or make any accusation of excessive force by Officer Wonch until this lawsuit was filed. Before then, there was no report of wrongdoing to investigate.

As in *Tompkins*, and unlike *Marchese*, plaintiff has shown no evidence that Mr. Hill ever raised a claim of brutality or excessive force in any of his later court appearances. Plaintiff has shown no evidence that a judge or court officer directed that the events that occurred at the time of the arrest be investigated. Plaintiff has shown no evidence that he ever – at any time

Kitch Drutchas Wagner Valitutti & Sherbrook
ATTORNEYS AND COUNSELORS
1440 W. RIDGE STREET
SUITE C
MARQUETTE, MICHIGAN
49855-3199

(906) 228-0001

before this lawsuit was filed – complained to the police department or to the township that he had been a victim of excessive force when the arrest was made.

The testimony of Brian Kjellin, at p. 29, shows that he conducted a post-incident interview with the victim of domestic violence, Vickie Lara, about 24-48 hours after Hill's arrest, and she did not at that time relate any information to him that would suggest that Mr. Hill had been injured in the course of the arrest.

> Q   How did you learn of the incident that occurred on March 22nd, 2019?
> A   I believe that at some point Officer Wonch had mentioned to me that he had arrested Mr. Hill and that he had gotten injured.  And I can't remember how long it was after.  It was, like, maybe six days, seven, a week, and that the chief at the time was given, you know -- knew about it and was given the report and the body cam video.
> Q   So the chief was given that material?
> A    Correct.
> Q   So did Wonch -- Officer Wonch tell you about this incident himself or how did you come to learn of it?
> A   I just think it was in passing in the offi- -- you know, one day in the office.  I had gone to Ms. Lara's house probably 24 to 48 hours after the original incident, do some follow-up in my detective capacity.  And I don't think anything was mentioned then, either.  Maybe none of us knew at that time; myself, Ms. Lara, the other witness that was present.  So it was probably three, four days after that that I learned about Mr. Hill's injury.

This testimony shows that there was nothing reported and therefore nothing to investigate, even two days after the arrest and the injury. Plaintiff has brought forth no evidence to rebut that testimony.

In his deposition, Kjellin stated did learn from Officer Wonch that Hill had been injured, perhaps three to four days after his followup interview with Lara, but there were no questions

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
1440 W. R IDGE S TREET
Suite C
MARQUETTE, MICHIGAN
49855-3199

(906) 228-0001

8

posed to him about what he was told about the extent of those injuries. The simple fact that a subject had been injured while resisting arrest is neither surprising nor concerning.

This case simply has no resemblance whatever to the scenario involved in *Marchese*, and plaintiff's effort to say it does should be firmly rejected by this Court.

**Summary and conclusion**

In his responsive brief, the plaintiff has simply not addressed the arguments made by the Township based on the *Fisher* and *St. John* cases. It would appear that the reason is that he cannot effectively counter those arguments.

We quote again from *Fisher*:

> Despite his arguments to the contrary, Fisher has failed to produce sufficient evidence that the officers' training programs were inadequate. In addition, Fisher has not shown that the County knew of prior unconstitutional actions by its employees and failed to respond. Accordingly, the district court did not err in granting summary judgment for Harden on the failure to train and supervise claim.

In this case, precisely the same is true. Plaintiff has brought forth no evidence of inadequate training or of prior acts of unconstitutional conduct by Officer Wonch. Plaintiff has made no effort in his response brief to direct the Court to evidence to counter the factual showing that has been made by the Township on both points.

For these further reasons, defendant Forsyth Township's Motion for Summary Judgment on the *Monell* issue should be granted.

KITCH DRUTCHAS WAGNER<br>
VALITUTTI & SHERBROOK

Dated:  March 2, 2022             By:     /s/  M. Sean Fosmire
                                           M. Sean Fosmire

Kitch Drutchas Wagner Valitutti & Sherbrook
ATTORNEYS AND COUNSELORS
1440 W. Ridge Street
Suite C
Marquette, Michigan 49855-3199
(906) 228-0001