UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD J. HILL,

    Plaintiff,

v

JUSTIN WONCH, and
TOWNSHIP OF FORSYTH,

    Defendants.

U.S. District Judge:
  Hon. Hala Y. Jarbou

U.S. Magistrate Judge:
  Maarten Vermaat

Case No: 2:19-cv-159

_____/

Phillip B. Toutant (P72992)
Karl P. Numinen (P46074)
NUMINEN DEFORGE & TOUTANT, P.C.
Attorneys for Plaintiff
105 Meeske Avenue
Marquette, MI  49855
(906) 226-2580

M. Sean Fosmire (P31737)
KITCH DRUTCHAS WAGNER
 VALITUTTI & SHERBROOK
Attorneys for Defendants
1440 W. Ridge Street, Ste. C
Marquette, MI 49855-3199
(906) 228-0001

_____/

**DEFENDANT'S BRIEF ON MEDICARE ISSUES**

**Introduction**

> NOTE: Since the reduction of medical expenses to account for Medicare payments is done by the Court after the jury has rendered its verdict but before the entry of judgment, the issues raised here should not affect any of the instructions to the jury or arguments by counsel during proofs.

In this case, we expect the plaintiff to assert that he can recover from the defendant the full amount of provider charges for the medical services he received for the treatment of his claimed injuries, subject to the obligation under Medicare Secondary Payer statute to repay the Coordination of Benefits and Recovery Contractor (CBRC) the much smaller amounts that CMS has actually paid to the providers.

In this case, the CRBC has submitted a listing that shows that the total of provider charges were $291,847.62 as of March 2020. The total amount that CMS paid for the services

under the Medicare program was $65,468.55. The amount paid was roughly 22% of the total provider charges. As we will note in more detail below, the providers are required under Federal law to accept those payments in full satisfaction of their claims for payment, and they have done so.

The defendant's position is that the plaintiff may not recover any of those provider charges beyond the amounts paid by CMS under the Medicare program. Once Medicare has paid for an item, it has an automatic statutory claim for reimbursement if the plaintiff secures a judgment based on a jury verdict in his favor. The claim for reimbursement, if there is one, belongs solely to the Federal government, although it is included in the plaintiff's claim for damages. Beyond repayment of the amount paid by CMS, the defendant has no additional obligation to the plaintiff (or to the providers) for any payment as to those treatments, for the reasons detailed below.

**Medicare and the prohibition on balance billing**

The Federal Medicare program is governed under Title 42, Chapter 7, Subchapter XVIII of the U.S. Code. Congress has enacted a comprehensive statute governing Medicare, and its provisions impose a number of requirements on beneficiaries and providers (hospitals and doctors, among others). The Medicare requirements that apply to providers are characterized as "Conditions of Participation." A provider is not required to participate in the Medicare program, but if he does, he must adhere to the Conditions of Participation.

The Medicare program is divided into several different "parts":

    Part A – Hospital Insurance Benefits

    Part B – Supplementary Insurance Benefits (charges by physicians and others)

      Part C – Medicare Advantage plans

      Part D – Voluntary Prescription Drug Program

Payments by the Federal government (Parts A and B) or by private contractors (Part C and D) are accompanied by an obligation on the part of the provider to comply with the Conditions of Participation. The Federal statute, in a section known as the Medicare Secondary Payer (MSP) law, also imposes an obligation on the beneficiary to ensure that the rights of reimbursement that exist under law are respected.

The MSP law is found under at 42 USC, Part E, 1395y(b). The regulations adopted by the Centers for Medicare and Medicaid Services (CMS) are found under the Code of Federal Regulations under Title 42, Chapter IV, Subchapter B (Medicare), Part 411. The Conditions of Participation for hospitals are found at Part 482, and those for physicians and other Part B providers are found at Part 489.

Section 411. 22 provides as follows. The "primary payer," in this context, is the defendant in a lawsuit:

> §411.22 Reimbursement obligations of primary payers and entities that received payment from primary payers.
>
> (a) A primary payer, and an entity that receives payment from a primary payer, must reimburse CMS for any payment if it is demonstrated that the primary payer has or had a responsibility to make payment.
>
> (b) A primary payer's responsibility for payment may be demonstrated by—
>
> (1) A judgment;
>
> (2) A payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary payer or the primary payer's insured; or

    (3) By other means, including but not limited to a settlement, award, or contractual obligation.

Then section 411.23 requires that the Medicare beneficiary (the patient) cooperate with the Federal government's reimbursement activities.

Part 489, entitled "Provider Agreements and Supplier Approval," sets forth the Conditions of Participation for providers other than hospitals.  The three important ones are:

- Section 489.20 requires a provider to "limit its charges to beneficiaries and to other individuals on their behalf."

- Section 489.21 requires a provider to agree not to make any charge to a beneficiary for any service for which the beneficiary is entitled to have payment made under the Medicare program, except for deductibles and copayments as provided under subpart C. This is sometimes referred to as a prohibition on "balance billing."

- Under subpart C, section 489.30 permits the provider to require that the beneficiary pay Part A and Part B deductibles and coinsurance payments.

Medicare uses a very complex system to pay for a beneficiary's medical expenses. In general, at the risk of oversimplification, we can advise the court:

- Hospitals are usually paid under Part A using a "prospective payment system" or PPS, and they are not permitted to make any charge to a Medicare beneficiary other than the allowed deductible and copay amount. Thus, balance billing by hospitals is prohibited.

- For most Medicare-covered services provided under Part B by physicians and suppliers, a deductible applies and the providers may charge a 20% copayment.

- Under the Affordable Care Act, an exception applies. No deductible or copay may apply for certain specified preventive services.

- The rules under Part B differentiate between participating and non-participating providers. As to physicians and suppliers under Part B, participating providers agree to accept the Medicare payment as full payment, subject to the permitted deductibles and copayments.  They are not permitted to submit any billing to the beneficiary.

MAR01:83703.1

- The Medicare payment for participating providers is 5% higher than for non-participating providers.
- Non-participating providers were formerly permitted to charge their full fee for their medical services; under the current rules, they may not charge more than 115% of the amount payable by Medicare – the "Medicare fee schedule amount"

Under both Part A and Part B, the amount payable by CMS is set by the Federal government, based on what is described as the "Medicare fee schedule." The amount is usually significantly lower than the "provider charge."

The following is the key point: For any particular service or product which is covered by Medicare, after deductibles and copays have been paid, and once CMS has paid the item to a provider that accepts Medicare assignment, the patient has no further obligation to make any payment to that provider for that service. Once payment is made, the right to reimbursement accrues to and belongs to the Federal government.

Under the Federal statute and regulations, payment of a medical expense under the Medicare program is the only payment that a hospital or a participating physician may require or request, subject to provisions for deductibles and copays. The prohibition on balance billing means that, once Medicare has made a payment, the individual beneficiary has no further obligation to the medical provider. He does not have any financial liability to the provider, he has no payment to make, and for that reason **he has no claim against the defendant** for those medical expenses.

The Sixth Circuit considered this issue in the context of medical expenses paid under the Medicaid program in *Spectrum Health Continuing Care Group v. Bowling*, 410 F.3d 304 (6th Cir. 2005). Although the *Bowling* case involved Medicaid, not Medicare, both statutes have the

same prohibition on balance billing. See 42 U.S.C. § 1396a(a)(25)(C) for the Medicaid prohibition.

Anna Marie Bowling had sustained a permanent brain injury resulting from an anoxic event during surgery performed in a New York hospital in 1997. Her family had instituted a lawsuit against a number of physicians and the hospital in New York courts. Bowling was admitted to a Spectrum-operated long term care facility in Grand Rapids in 1998, and remained there until 2002. The court's opinion noted that "Spectrum agreed to admit Bowling to GVHC on the condition that Bowling's representatives provide written acknowledgment of a lien on the proceeds of a settlement or verdict in the malpractice suit to cover her medical costs."

Bowling became eligible for Medicaid in April 1999. Spectrum applied for and received payment in the amount of $101,021.86 from Medicaid for the costs of her care. It was stated and apparently uncontested that the "total customary cost" of that care was $639,549.67.

The New York lawsuit was settled in July 2002. The settlement agreement among the parties, submitted to the court for approval, included provision for the repayment of $575,000 to Spectrum to satisfy its asserted lien. This sum was forwarded to Spectrum. After a refund for an overpayment, the amount paid was $538,572.81.

Thereafter, the trustees of a trust set up for Bowling objected to the agreement to pay, and instituted a declaratory action in Federal court. Pending a ruling, the parties agreed that the disputed funds would be.

The district court granted summary judgment in favor of Spectrum's claim to payment. The Sixth Circuit panel *reversed*, and found that the lien agreement represented an effort to impose "balance billing" to the patient and was thus in violation of both the Michigan Medicaid

MAR01:83703.1

statute and the Federal statute prohibiting such balance billing. Spectrum did not have to apply for or accept payment by the Medicaid agency, it noted. By accepting the payment, Spectrum had waived its right to its "customary fee" for the medical services in question. Quoting from its earlier decision in *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1210 (6th Cir. 1997), the court noted that "medical service providers must accept the state-approved Medicaid payment as payment in full, and may not require that patients pay anything beyond that amount."

After considering a number of other cases addressing the issue, all of which were in agreement on this point, the court went on to state:

> Applying these principles to this case, we conclude that the enforcement of Spectrum's lien on the proceeds of the malpractice settlement to recover the balance of its customary fee is prohibited by federal and state law. Spectrum provided Bowling with medical care from May 1999 through September 2002, in exchange for which it received $101,021.86 from Medicaid. Spectrum was not required to seek payment from Medicaid; instead, Spectrum could have provided its services in exchange for enforcing its lien, which was the original agreement between the parties. Having chosen to accept payment from Medicaid, however, Spectrum abandoned all rights to further recovery of its customary fee from the lien.

Thus, once a medical provider has accepted payment from Medicaid for medical services provided, it cannot demand or require payment from the Medicaid beneficiary or from the no-fault insurer, and it cannot rescind the acceptance of the Medicaid payment in order to seek a higher payment. As required by the Michigan statute, the provider must "accept payment from the state as payment in full," and that acceptance is final and complete.

This same principle applies, for the same reason, when the payment is made under the Medicare program.

MAR01:83703.1

**Conclusion**

For the foregoing reasons, there is simply no claim that plaintiff Hill has against the defendant as to the medical services beyond the amounts that have been submitted to and paid under the Medicare program. Those expenses have not been incurred by Mr. Hill, and they cannot be included in his claim for damages.

The defendant's sole obligation, if the jury were to find in favor of plaintiff on his damages claim, would to repay the CBRC under the Medicare Secondary Payer law. It would have no further obligation to the plaintiff or to the providers as to these medical charges.

                                          Respectfully submitted,

                                          KITCH DRUTCHAS WAGNER
                                          VALITUTTI & SHERBROOK

Dated:  April 11, 2022                          By:____/s/ *M. Sean Fosmire*_____
                                                    M. Sean Fosmire