IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD J. HILL, | ) | |
|     Plaintiff, | ) | Case No. 2:19-cv-159-HYJ-MV |
| | ) | |
| | ) | U.S. District Judge: |
| v. | ) | Hon. Hala Y. Jarbou |
| | ) | |
| JUSTIN WONCH, | ) | U.S. Magistrate Judge: |
| | ) | Hon. Maarten Vermaat |
|     Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**

Plaintiff Richard Hill provides the following in opposition to Defendant's Motions in Limine, each of which is taken up in turn.

**I.     MOTION IN LIMINE TO "TRUNCATE" ARREST BODYCAM VIDEO**

Officer Wonch is picking and choosing the portions of the Arrest Video that suit his purposes and objecting to others. By Defendant's logic, any portion of the arrest video that was not ruled to create questions of material fact for the jury should be excluded from evidence. The Court's ruling on summary judgment ruled that certain actions by Officer Wonch were subject to qualified immunity. However, Defendant does not seek to exclude the first 15 minutes of the arrest video and is anticipated to introduce portions of it into evidence to aid in his defense of the case. Defendant claims "[t]he only factual issues that are to be presented to the jury for its consideration are those involved in [Arrest Video, 15:10-17:15]." Def's. Br., PageID.697. Defendant is mistaken.

The Court's limiting of the extent of the excessive force claims on qualified immunity grounds does not limit evidentiary value of other evidence ruled not to constitute excessive force.

In determining whether the use of force by an officer amounts to an "unreasonable seizure" under the Fourth Amendment, the reasonableness of the officer's use of force must be assessed. *Graham v. Connor*, 490 U.S. 386, 395-396; 109 S.Ct. 1865; 104 L.Ed.2d 443 (1989). In assessing the reasonableness of the officer's actions, "careful attention" must be paid to the "facts and circumstances of each particular case." *Id.* at 396. The reasonableness inquiry also requires assessment of the "totality of the circumstances" bearing on the use of force at issue. *Id.*; citing *Tennessee v. Garner*, 471 U.S. 1, 8-9; 105 S.Ct. 1694; 85 L.Ed.2d 1 (1985). The totality of the circumstances includes facts outside of the actual application of force at issue. *See id.* Thus, the jury's determination of whether Mr. Hill's civil rights were violated turns on whether Defendant Wonch's conduct was objectively unreasonable under the totality of the circumstances. The latter portion of the arrest video should be considered part of the totality of the circumstances.

Defendant's argument is further flawed insofar as it does not consider the evidentiary value of the latter portion of the arrest video for proofs other than excessive force. For example, the jury will have to determine whether punitive damages should be awarded. See punitive damages framework, § III(C), *infra*. The latter portion of the Arrest Video is relevant as evidence of whether Officer Wonch acted with reckless or callous indifference toward Mr. Hill's rights, whether Officer Wonch acted willfully, deliberately, or maliciously.

The latter portion of the video is also highly relevant to causation. *I.e.*, whether Mr. Hill was able to walk after Officer Wonch's knee strikes. Here, before Officer Wonch arrested Mr. Hill, he was able to stand, walk toward, and fall onto a couch. After Officer Wonch took Mr. Hill to the ground and applied multiple knee strikes, Mr. Hill was unable to walk. The post-arrest portion of the video shows Officer Wonch engaging in an unsuccessful attempt to stand him up,

dragging him outside, and leaving him on the cold, snowy ground, where Hill still made no effort to get up. It is anticipated that Defendant will attempt to introduce alternative etiology evidence as to causation at trial. Preventing introduction of some of the most direct temporal evidence of Mr. Hill's injuries deprives Plaintiff of the ability to introduce important evidence that will support causation. The sole argument Defendant makes here is that the latter portion of the Arrest Video fails the FRE 403 balancing test as a consequence of the Court's Summary Judgment Ruling on qualified immunity. See Def's. Br., ECF No. 84, PageID.697. That said, the latter portion of the Arrest Video possesses significant probative value as to other relevant issues aside from the excessive force inquiry. Moreover, Defendant specifically articulates nothing about the latter portion of the video that creates a risk of unfair prejudice. With this backdrop, FRE 403 does not bar introduction of this portion of the Arrest Video.

Defendant's Motion should be denied insofar as the latter portion of the Arrest Video has significant relevance to issues in this case and Defendant has failed to articulate any risk of unfair prejudice associated with this portion of the Arrest Video.

## II.     MOTION IN LIMINE FOR ADVANCE RULING ON PURPORTED CLAIMS OF "ORDINARY NEGLIGENCE"

Defendant claims that Plaintiff is advancing a "new theory of liability," alleging "ordinary negligence." Def's. Br., PageID.698. Defendant is mistaken. Plaintiff's police practices expert did not testify that Officer Wonch was guilty of "ordinary negligence."[1] To this writer's recollection, it is not believed that the phrase "ordinary negligence," or even the word "negligence" was uttered by Plaintiff's expert in his deposition at all. That said, Mr. Katsaris did

---

[1] The transcript of Plaintiff's expert, Ken Katsaris has not been completed by the court report yet and has not been received by either party.

3

testify that Officer Wonch failed to comply with the department's policies and other authorities provisions on use of force, domestic violence calls (including need for backup and separation of the parties on scene), pressure point control tactics, and other issues.

### A. *Courts Have Generally Held that Evidence of Departmental/National Police Policies, and a Defendant's Violations Thereof Are Relevant to the Objective Reasonableness Inquiry Under § 1983.*

Courts have held that experts may testify concerning an officer's compliance with departmental internal polices and national policing standards. *E.g.*, *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004) (plaintiff's expert allowed to testify about: (a) use of force continuum generally; (b) specific training received by the officers; and (c) "opinion that if the witnesses' testimony is credited, the Officers' actions violated nationally recognized police standards governing excessive force."); *e.g.*, *Alverado v. Oakland* County, 809 F.Supp.2d 680, 690 (E.D. Mich. 2011) (expert permitted to testify as to nationally-accepted police practices and departmental policies/procedures concerning the use of force); *e.g.*, *White v. Gerardot*, No. 1:05CV-382, 2008 WL 4372019 at *7  (N.D. Ind. 2008) (expert witness Ken Katsaris (same witness) permitted to testify as to pre-shooting conduct of defendant including failure to call for backup, use of police lights, obtaining medical attention for those shot, *etc.*, which may have prevented shooting from occurring. The court found Katsaris' police practices testimony would be helpful to the jury in deciding whether the defendant acted reasonably when confronted with the facts of a given situation in the excessive force inquiry); *e.g.*, *Norman v. City of Lorain, Ohio*, No. 04-cv-913 2006 WL 5249725 at *3 (N.D. Ohio 2006) (plaintiff's expert allowed to testify as to police procedures to be followed in a situation); *e.g.*, *U.S. v. Eberle*, No. 08-cr-20139, 2008 WL 4858438 at *1-3 (E.D. Mich. 2008) (plaintiff's expert allowed to testify re: use of force

4

continuum, specific training officers receive, and whether those standards were violated by defendants). Thus, Plaintiff's expert should be permitted to discuss applicable department procedures as well as national standards. His doing so is not advancing an "ordinary negligence" theory as Defendant claims.

      **B.** *Caselaw Cited by Defendant Fails to Support the Relief Requested.*

In support of this Motion Defendant cites *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972). This case simply does not support Defendant's argument. *Fitzke* involved the reversal of summary judgment in favor of a county in a § 1983 case involving failure to render medical care to a jail inmate who had been injured in a car crash prior to his arrest. *Id.* at 1074-1075. There, the Sixth Circuit was concerned with two issues: (1) that the district court found that failure to render timely medical care to an arrestee could not give rise to a § 1983 claim;[2] and (2) the inadequate showing of an absence of questions of material fact used to support lower court's granting of summary judgment for the county. *Id.* at 1077-1079. The *Fitzke* court found that a § 1983 claim may lie when the allegations arise out of tort. In other words, *Fitzke* stands for the ***opposite*** proposition that Defendant claims. In fact, the *Fitzke* court quoted *Puckett v. Cox*, 456 F.2d 233, 236 (6th Cir. 1972) in observing that '"numerous courts have recognized that various types of tortious conduct—including some forms of negligence—can be the basis for relief under § 1983."' *Fitzke*, 468 F.2d at 1077, n. 7. The Supreme Court has echoed this analysis when it remanded a case to the Ninth Circuit, directing the appellate court to evaluate whether an officer's actions leading to an excessive force claim under the tort law principles of proximate

---

[2]    *Id.* at 1075-1076

causation and foreseeability. *County of Los Angeles, Calif. v. Mendez*, 137 S.Ct. 1539, 1549; 137 S.Ct. 1539 (2017). Thus, the caselaw cited by Defendant fails to support his argument.

    C.    *<u>Relief Requested.</u>*

Plaintiff is not attempting to introduce an ordinary negligence theory of liability as argued by Defendant. Plaintiff's expert testified, permissibly, about department/national policies relevant to this case and their implications to Officer Wonch's use of force. Courts generally allow this testimony. Defendant's Motion should be denied.

### III. MOTION IN LIMINE FOR ADVANCE RULING THAT OFFICER WONCH'S FOUL LANGUAGE "DOES NOT AND CANNOT" SUPPORT PLAINTIFF'S § 1983 CLAIMS

Defendant seeks a ruling that Officer Wonch's use of foul language towards Mr. Hill "does not and cannot support a claim for a constitutional violation." Def's. Mot. in Lim., ECF No. 83, PageID.693. Defendant's Motion should be denied as Defendant Wonch's foul language is part of the totality of the circumstances as part of the objective reasonableness inquiry. Further, Defendant's Motion is not well-supported by controlling or persuasive caselaw.

    A.    *<u>Officer Wonch's Foul Language is Part of the Totality of the Circumstances to be Considered in Assessing the Objective Reasonableness of His Actions.</u>*

"In evaluating the Fourth Amendment reasonableness of a seizure, the officers' verbal interaction as well as their physical conduct become part of the totality of the circumstances to be considered." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1194 (10th Cir. 2001). Other courts have held similarly. For example, in *Brown v. City of Hialeah*, 30 F.3d 1433, 1436-1437 (11th Cir. 1994), the 11th Circuit found that the trial court abused its discretion when it excluded evidence of officers' use of racial slurs during Plaintiff's arrest and beating. There, Plaintiff Gavin Brown was beaten by arresting officers after he pulled a gun and attempted to rob undercover

6

officers during an attempted controlled sale of cocaine to him. *Id.* at 1434. Concequently, the undercovers and supporting officers (who were listening nearby via concealed wire) beat and arrested the plaintiff. *Id.* at 1434-1435. During the arrest/beating, officers used a racial slur (the n-word) towards the plaintiff and encouraged other officers to "[k]ill that son of a bitch" and "kill him, kill him, kill him" while another voice (presumably plaintiff's) can be heard saying "[n]o, no, please, please, please." *Id.* at 1435. Following his criminal conviction, he filed a § 1983 claim arising out of his arrest. The district court judge excluded evidence of the racial slur and the case was decided in favor of the defendants. Plaintiff appealed.

The 10th Circuit found the exclusion of both the racial slur and violent language to be an abuse of discretion. The court held that "[a]lthough no Eleventh Circuit case is directly on point, we accept that sometimes words spoken while actions are being taken can be useful to one seeking to determine from all the circumstances the reasonableness of the actions." *Id.* at 1436. The court held that the language used by the officers was part of the totality of the circumstances to be used in assessing the objective reasonableness of the defendants' actions. *Id. See e.g.*, *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994) (affirming district judge's consideration of officers' offensive language as part of the objective reasonableness inquiry on summary judgment).

Admittedly, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham v. Connor*, 490 U.S. 386, 397; 109 S.Ct. 1865; 104 L.Ed.2d 443 (1989); *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, *supra*). However, Defendant does not seek a cautionary instruction on officer intent.

Similarly, Plaintiff does not seek to use Officer Wonch's foul language to show subjective evil intent, as part of the excessive force inquiry. Plaintiff further concedes that foul language alone does not constitute a Fourth Amendment violation. However, Officer Wonch's foul language is relevant to the Fourth Amendment inquiry as it is relevant to objective reasonableness under the totality of the circumstances.

### B.    *Defendant's Motion is Not Well-Supported by Controlling or Persuasive Caselaw.*

In support of this Motion, Defendant cites no caselaw from the U.S. Supreme Court, the Sixth Circuit, or Michigan's federal courts. Defendant cites three cases in support of the relief requested. Two of the cases Defendant cites involve prisoners alleging Eighth Amendment violations.[3] The third case cited by Defendant, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1479 (3d Cir. 1990), supports use of foul language as substantive evidence in a § 1983 claim, albeit in the context of a 14th Amendment equal protection claim. *Id.* Thus, no law cited by Defendant supports the relief sought in this excessive force case.

Defendant cites *Olatarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) in support of this Motion. Def's. Br., PageID.705. However, *Olatarzewski* itself provides a significant distinction concerning the use of foul language by Defendant Wonch: "*[s]tanding alone*, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *Olatarzewski*, 830 F.2d at 139 (emphasis added). First, *Olatarzewski* involved a § 1983 allegation under the Eighth

---

[3] "The Eighth Amendment only provides protection post-conviction." Court's Op., ECF No. 47, PageID.229 (citing *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015)). *Olatarzewski*, *infra*, explicitly involves an Eighth Amendment allegation. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979), quoted in Defendant's Motion, involved a *pro se* incarcerated plaintiff and no specific constitutional violation is identified in the 10th Circuit's opinion. *Id.* Inferentially, it is an Eighth Amendment case. See Court's Op., ECF No. 47, above.

8

Amendment's proscription of cruel and unusual punishment. Needless to say, an Eighth Amendment allegation requires a completely different constitutional analysis not applicable to this case. Second, *Olatarzewski*'s "standing alone" caveat is important here. Officer Wonch did not simply swear at Mr. Hill. Rather, he berated him with a string of expletives[4] while savagely pummeling the 68-year-old with knee strikes for approximately 40 seconds as he lay face-down on the floor, pinned in a corner between a wall and the back of a large couch. *See* Arrest Video, 15:00-16:00. Thus, the situation here is different. Officer Wonch's foul language was coupled with a severe beating.

      C.    *Officer Wonch's Language Offers Persuasive Evidence on Punitive Damages Issues.*

Plaintiff intends to request punitive damages in this case. See Pl's. Br., ECF No. 95, PageID.744-PageID.749. Punitive damages are allowed in § 1983 claims. *Id.* The award of punitive damages is based on whether Defendant "acted willfully, deliberately, maliciously, or with reckless disregard of the plaintiff's constitutional rights." Avery, Rudouski and Blum, *Police Misconduct, Law and Litigation*, (3d Ed.) § 12:46; *Smith v. Wade*, 461 U.S. 30, 30; 103 S.Ct. 1625; 75 L.3d.2d 632 (1983) (Syl. § 2: "A jury may be permitted to assess punitive damages in a § 1983 action when the defendant's conduct involves reckless or callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent."). Needless to say, Officer Wonch's language during Mr. Hill's arrest is highly probative as to whether he acted with reckless or callous indifference toward Mr. Hill's rights, whether Officer Wonch acted willfully, deliberately, or maliciously.

---

[4] e.g., "Shut the fuck up! Fucking piece of shit!" Arrest Video, 16:00.

D.     *Relief Requested.*

Defendant's Motion seeks a cautionary instruction whenever the Arrest Video is played and in the Court's final instructions to the jury. Def's. Br., ECF No. 84, PageID.704. As the jury instruction sought by Defendant runs contrary to Fourth Amendment caselaw, it should not be read. The Court should not read such an instruction when the arrest video is played or in final instructions.

                                                                              Respectfully submitted,

                                                                              **Numinen, DeForge & Toutant, P.C.**

                                                                                 s/ Phillip B. Toutant
                                                          _____
                                                          PHILLIP B. TOUTANT (P72992)
                                                          Attorney for Plaintiff
                                                          105 Meeske Ave.
                                                          Marquette, MI 49855
                                                          (906) 226-2580
                                                          phillip@numinenlaw.com

## CERTIFICATE OF COMPLIANCE RE: WORD COUNT

Pursuant to WDMI LCivR 7.3(b)(ii), this filing complies with WDMI LCivR 7.3(b)(i) insofar as it contains 2,744 words as defined by said rule. This word count was performed using Microsoft Word for Microsoft 365.

/s Phillip B. Toutant
_____
Phillip B. Toutant
Attorney for Plaintiff