IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD J. HILL, | ) | |
| | ) | Case No. 2:19-cv-159-HYJ-MV |
| Plaintiff, | ) | |
| | ) | U.S. District Judge: |
| v. | ) | Hon. Hala Y. Jarbou |
| | ) | |
| JUSTIN WONCH, | ) | U.S. Magistrate Judge: |
| | ) | Hon. Maarten Vermaat |
| Defendant. | ) | |
| | ) | |

## FINAL PRETRIAL CONFERENCE ORDER

A final pretrial conference was held on the 5th day of July, 2022.

Appearing for the parties as counsel were:

    Phillip B. Toutant for Plaintiff
    M. Sean Fosmire for Defendant

1)     <u>Exhibits</u>: The following exhibits will be offered by the plaintiff and the defendant:

    *Plaintiff:*
    1. UPHS-Marquette medical records – **NOTE: No objection**

    2. Lighthouse at Ishpeming medical records – **NOTE: No objection**

    3. Upper Great Lakes Family Health Center records – **NOTE: No objection**

    4. Marquette County Central Dispatch Records – **NOTE: No objection**

    5. Marquette County Sheriff's Office Records – **NOTE: No objection**

    6. Medical billing records – **NOTE: No objection**

    7. Recorded interview of Timothy Normand by Wally Helmila

    8. Recorded interview of Vickie Lara by Wally Helmila
    **NOTE RE: PLAINTIFF'S EXHIBITS 7 AND 8: These exhibits are inadmissible as hearsay.  Plaintiff has advised the Court that he may attempt to show that these recorded interviews are admissible through an exception to the hearsay rule in his trial brief or in trial.**

9. Guidelines from Forsyth Township Police Department Operating Guideline Manual, including but not limited to the following guidelines:
    a. Domestic Violence
    b. Use of Force/Lethal Force
    c. Arrest Management
    d. Use of Restraining Devices
    e. Code of Ethics
    f. Internal Investigations
    g. Department Discipline Matrix
    h. Report Writing
    i. Mutual Aid
    j. Department Job Descriptions
    k. Other guidelines for impeachment purposes

**NOTE RE: EXH. 9:  No objection**

10. Defendant's personnel file or excerpts thereof – **NOTE: No objection**

11. Curriculum Vitae, Ken Katsaris – **NOTE: No objection**

12. Arrest bodycam video **- NOTE: No objection provided that the last 3 minutes are removed, as required by Order (see ECF No. 103, PageID.787)**

13. Other bodycam videos **- NOTE: No objection from Defendant**

14. Imaging studies (x-rays, CT scans, etc.) – **NOTE: No objection**

15. Responses to written discovery requests:
(From bottom of page 9 of proposed Final Pretrial Order, ECF No. 112.)
Written Discovery:
*Plaintiff*:
    a. Defendant Wonch's Responses to Plaintiff's Interrogatories
        **NOTE: No objection**
    b. Forsyth Township's Responses to Plaintiff's Interrogatories
        **NOTE: Objection sustained because FTPD is no longer a party to the case. Exhibit may remain in exhibit book and be used for other purposes during trial, but will not be presented to the jury as substantive evidence.**
    c. Defendant Wonch's Responses to Plaintiff's Requests for Admissions
        **NOTE: No objection**
    d. Defendant Wonch's Responses to Plaintiff's Requests for Production
        **NOTE:  No Objection.**
    e. Defendant Wonch's Fed. R. Civ. P. 26(a)(1) Disclosures.  **NOTE: objection sustained.  Defendant's Rule 26(a)(1) disclosures are not admissible.**

2

16. Noneconomic damages elements slide (demonstrative)

17. Summaries of Plaintiff's pain scale reporting (summary/demonstrative)
    **NOTE RE: EXHIBITS 16 and 17: The parties shall be prepared to discuss these exhibits during a telephone conference on Friday, July 8, once Defendant has received Plaintiff's exhibit book**.  The parties are advised that demonstrative exhibits may be used in trial but are not admitted into evidence.  Summaries may be admitted into evidence pursuant to Fed. R. Evid. 1006.

*Defendant:*
A – Training materials on Threat Pattern Recognition

B – Selections from training materials
**NOTE RE: DEFENDANT'S EXHIBITS A and B:  Admissibility is to be determined.  The parties shall be prepared to discuss these exhibits during a telephone conference on Friday, July 8, once Plaintiff has received Defendant's exhibit book.**

C – FTPD policy on Use of Force – **NOTE: No objection**

D – FTPD policy on domestic violence – **NOTE: No objection**

E – Curriculum Vitae for Terry Nerbonne – **NOTE: No objection**

F – Bodycam video for subject incident – **NOTE: No objection**

G – Bodycam video – breathalyzer administration – **NOTE:  Admissibility is to be determined.  The parties shall be prepared to discuss these exhibits during a telephone conference on Friday, July 8, once Plaintiff has received Defendant's exhibit book.**

H – Bodycam video – interview of Lara by Kjellin

I – Bodycam video – interview of Lara by Mills
**NOTE RE: DEFENDANT'S EXHIBITS H and I:  Objection sustained.  Exhibits may remain in exhibit book and be used for other purposes during trial, but will not be presented to the jury as substantive evidence.**

J – Court records for the charges related to 3-22-19 encounter – **NOTE: Not Admissible based on court's previous ruling**

K – Jail records – Marquette Sheriff's Department – **NOTE:  No objection. Admissible subject to this Court's prior order and appropriate redaction of**

3

> **records. This is the same as Plaintiff's Exhibit #5 and will have the same redactions.**
>
> L – Report of 12/27/2012 assault incident – **NOTE: Not Admissible**
>
> M – Recording of call/complaint from Vickie Lara – early 2021
>
> N – Audio recording of 911 call made by Vickie Lara – 3/22/2019
> **NOTE RE: DEFENDANT'S EXHIBITS M and N: Admissibility is to be determined. The parties shall be prepared to discuss these exhibits during a telephone conference on Friday, July 8, once Plaintiff has received Defendant's exhibit book.**

2) <u>Uncontroverted Facts</u>: The parties have agreed that the following may be accepted as established facts:
   a. Defendant used knee strikes against Plaintiff
   b. There were no weapons on Mr. Hill or in his vicinity at the time of his arrest
   c. Defendant declined backup when offered by the dispatcher
   d. The incident was recorded on Defendant's bodycam
   e. Plaintiff did not strike Ms. Lara at any point during the arrest video.
   f. Justin Wonch was a patrolman employed by the Forsyth Township Police Department on March 22, 2019.
   g. Wonch had been employed by the FTPD since June 2018.
   h. He had previously been employed by the department from 2009-2015.
   i. He worked for the State of Michigan, Department of Health & Human Services, Child Protective Services in about 2015-2016. Plaintiff does not controvert this fact, but does object, FRE 402-403.
   j. He received training on Threat Pattern Recognition at Northern Michigan University in 2017.

3) <u>Controverted Facts and Unresolved Issues</u>: The factual issues remaining to be determined and issues of law for the Court's determination are:
   a. Whether Plaintiff's Fourth Amendment rights were violated
   b. Whether the amount of force used by Defendant was objectively reasonable
   c. The extent of Plaintiff's damages
   d. Whether Defendant committed an assault/battery
   e. Whether Defendant could have separated Hill and Lara during the encounter
   f. What parts of Hill's body were struck by the knee strikes that Officer Wonch used?
   g. Were any other elements of physical force other than knee strikes used?

4

4) <u>Witnesses</u>:

*Plaintiff:*

1. Plaintiff          will call
 c/o Plaintiff's counsel
 105 Meeske Ave.
 Marquette, MI 49855
 (906) 226-2580

2. Defendant (via video deposition)          will call
 c/o Defendant's counsel
 1440 W. Ridge St., Ste. C
 Marquette, MI 49855
 (906) 228-0001

3. Defendant (adverse)          may call
 c/o Defendant's counsel
 1440 W. Ridge St., Ste. C
 Marquette, MI 49855
 (906) 228-0001

4. Chief Brian Kjellin (adverse)          may call
 99 N. Pine St.
 Gwinn, MI 49841
 (906) 346-9224

5. Vickie Lara (via deposition)          may call
 Unknown

6. Vickie Lara          may call
**NOTE: Witness's whereabouts unknown at this time. If found, she may be called.**
 191 Warrior St.
 Gwinn, MI 49841
 (906) 346-2055

7. Timothy Normand, Dec'd. (via deposition)          may call
 N/A Mr. Normand is deceased

8. Wally Helmila          will call
 6 Grove Hill Ct.
 Marquette, MI 49855
 (906) 869-7661

9. Joseph Fitzgerald (via de bene esse deposition)          will call
 100 S. Marley St.

5

   St. Ignace, MI 49781
   (906) 643-1911
**NOTE:  Will be by video deposition**

| | |
|---|---|
| 10. Craig Coccia, M.D. | may call |
|   850 W. Baraga Ave. | |
|   Marquette, MI 49855 | |
|   (906) 449-3000 | |
| 11. Sarah Herrera, M.D. | may call |
|   850 W. Baraga Ave. | |
|   Marquette, MI 49855 | |
|   (906) 449-3000 | |
| 12. David J. Bidle, M.D. | may call |
|   850 W. Baraga Ave. | |
|   Marquette, MI 49855 | |
|   (906) 449-3000 | |
| 13. Louis A. Ostola, M.D. | may call |
|   850 W. Baraga Ave. | |
|   Marquette, MI 49855 | |
|   (906) 449-3000 | |
| 14. Katherine Kroll, D.O. | may call |
|   301 Explorer St. | |
|   Gwinn, MI 49841 | |
|   (906) 346-9275 | |

**NOTE RE: PLAINTIFF'S MEDICAL DOCTORS (WITNESSES 10 through 14): Plaintiff is likely to call only one of these witnesses and may not call any.**

| | |
|---|---|
| 15. Dean Rushford | may call |
|   236 W. Baraga Ave. | |
|   Marquette, MI 49855 | |
|   (906) 225-8435 | |
| 16. Kate Bonifas | may call |
|   236 W. Baraga Ave. | |
|   Marquette, MI 49855 | |
|   (906) 225-8435 | |

17. Any and all witnesses identified by Defendant  may call
  Contact information to be supplied by Defendant

18. Any and all witnesses necessary for rebuttal  may call
  Contact information unknown as need for/identities of rebuttal witnesses
  is presently unknown and unknowable

Expert Witness:

> Ken Katsaris            will call in person
> 400 Capital Cir. S.E., Ste. 18299
> Tallahassee, FL 32301
> (850) 224-2929
> **NOTE:   No objection**

Mr. Katsaris will testify as to police practices, use of force, and his opinions with regard to the facts of this case. He has extensive experience both in law enforcement and training of law enforcement officers.

Plaintiff reserves the right to elicit testimony from medical providers and law enforcement officer lay witnesses within the scope of FRE 702

*Defendant:*

1. Brian Kjellin, Chief of Police – will call

2. Justin Wonch – will call

3. Steven Mills, Forsyth Township Police Department, Gwinn, Michigan – may call

4. Jesse Cadwell, Forsyth Township Police Department (impeachment witness), Gwinn, Michigan – may call

5. Joseph Boogren, Forsyth Township Supervisor, Gwinn, Michigan (impeachment witness) – may call

6. Dean Rushford, Marquette Sheriff's Department, Marquette, Michigan – may call
   (telephone number for a law enforcement officer not included)

7. Gordon Warchock, former Chief of Police – may call
   (telephone number for a retired law enforcement officer not included)

8. Sgt. Kate Bonifas, Marquette Sheriff's Department, Marquette, Michigan – may call

9. (Kristine McCoy, hospital representative, has been listed but will not be called during proofs)

*Plaintiff's Objections to Anticipated Lay Witness Testimony:*
Plaintiff objects to Defendant calling of Township Supervisor Joseph Boogren as said witness was never disclosed in the course of discovery, Rule 26(a)(1), Defendant's witness list or

7

otherwise. Plaintiff further objects to testimony of this witness concerning Chief Fitzgerald's resignation from the Forsyth Township Police Department insofar as it is irrelevant. In his de bene esse deposition testimony, Mr. Fitzgerald testified that a false allegation was raised against him after he raised certain concerns about issues with the department. Mr. Fitzgerald was unable to testify on this issue at his deposition because of the terms of his severance agreement. Though no information has been disclosed about the circumstances of Mr. Fitzgerald's resignation, it is clear that those circumstances have nothing to do with the facts of this case and are irrelevant. FRE 401-402. In the event that the Court allows such testimony, Plaintiff may call Mr. Fitzgerald as a rebuttal witness.

Plaintiff further objects to testimony or inferences that former Forsyth Township Police Department Officer Zach Burch provided any information to Plaintiff's counsel. In Mr. Fitzgerald's deposition, the defense asked questions of Mr. Fitzgerald about Officer Zach Burch being on the force at the same time Mr. Fitzgerald was chief. By way of background, Officer Burch is and was in a relationship with Plaintiff's counsel's former paralegal, Lauren Peters (herself the daughter of an Alger County Sheriff's Deputy), who is now a law student at the University of Detroit Mercy, aspiring to become an assistant prosecutor. Officer Burch is now a Deputy for the Calhoun County Sheriff's Department. It appears that, with no basis whatsoever, Defendant's counsel intends to imply that Mr. Burch provided information about this incident to Ms. Peters, which was in turn provided to Plaintiff's counsel. Not only are such implications unfounded, they are reprehensible. Simply put, Ms. Peters and Mr. Burch engaged in no such activity. Worse, placing such speculative, incendiary implications into the public record could have profound implications on the futures of these two promising young people. Further still, such inflammatory implications are irrelevant and inadmissible under FRE 401-402 and even if considered relevant, should be ruled inadmissible under FRE 403.
**NOTE: Plaintiff may present these objections to the District Judge**

*EXPERT WITNESS*

Terry Nerbonne
19580 23 Mile Road
Hersey, MI 49639
231-832-4991
Police practices, use of force
Has been teaching in the criminal justice program at Ferris State University since 1973, full professor since 2009. Retired from full-time teaching in 2014, adjunct faculty since then.
Has been extensively involved in the training of police officers on use of force issues.

5) Depositions and Other Discovery Documents: All depositions, answers to written interrogatories, and requests for admissions, or portions thereof, that are expected to be offered in evidence by the plaintiff and the defendant are:

*Plaintiff:*

Depositions:
1. Deposition of Timothy Normand: p. 4 l. 10-16 & 22-23, p. 5 l. 3-4 & 10-12, p. 6 l. 14-18, p. 10 l. 10-12 & 24-25, p. 8 l. 1-2, 18-20 & 22-25, p. 9 l. 1-16 & l. 17-18, p. 10 l. 7-24, p. 11 l. 7-16, p. 12 l. 1-5 & 11-18, p. 13 l. 5-8 & 14-25, p. 14 l. 1-2, p. 23 l. 2-6, p. 24 l. 17-22, p. 26 l. 3-8 & 12-17, p. 28 l. 15-17, p. 35 l. 5-7, 9, 11-13, 15-16, 18-21 & 23-25, p. 36 l. 1.
**NOTE:  Deposition will be read into the record**

2. Deposition of Vickie Lara: p. 3 l. 10-12 & 23-25, p. 23 l. 7-12, p. 24 l. 9-17, p. 38 l. 2-5, 19-23 & 25, p. 39 l. 1-11, p. 40 l. 4-15, p. 63, l. 13-20, p. 72 l. 5-18 & 20-25, p. 73 l. 1-4 & 25, p. 74 l. 1-20, p. 75 l. 5-8 & 18-25, p. 76 l. 1-6, p. 87 l. 10-11 & 13-25, p. 88 l. 1-6, p. 89 l. 24-25, p. 90 l. 1, 3 & 8-25, p. 91 l. 1-2.
**NOTE:  Deposition will be read into the record**

3. Video Deposition of Justin Wonch: p. 3 l. 3-25, p. 4 l. 1-16, p. 5 l. 24-25, p. 6 l. 1-20, p. 13 l. 21-25, p. 14 l. 4-7, p. 16 l. 9-18, p. 24 l. 17-20, p. 26 l. 22-25, p. 27 l. 1-8, p. 29 l. 1-8, p. 32 l. 21-25, p. 33 l. 1-13, p. 43 l. 18-25, p. 44 l. 1-4, p. 46 l. 2-8, p. 47 l. 4-25, p. 48 l. 1-6, p. 49 l. 15-25, p. 50 l. 1-2 & 5-25, p. 51 l. 1-11 & 14-25, p. 52 l. 1-25, p. 53 l. 1-25, p. 54 l. 1-13, p. 55 l. 3-24, p. 56 l. 1-10 & 16-18, p. 57 l. 1-25, p. 58 l. 1-25, p. 59 l. 1-25, p. 60 l. 1-7, p. 61 l. 6-25, p. 62 l. 1-25, p. 63 l. 1-24, p. 64 l. 8-25, p. 65 l. 1-19, p. 70 l. 24-25, p. 71 l. 1-21, p. 83 l. 4-10 & 24-25, p. 84 l. 1-9, p. 86 l. 7-17.

4. De bene esse video deposition of Joseph Fitzgerald to be played.  Excerpts TBD.


## DEFENDANT'S OBJECTIONS TO DEPOSITION TESTIMONY

We are directed under the Case Management Order to "indicate all objections to the anticipated testimony of each non-expert witness." The depositions that we believe will be offered by the plaintiff are those of
   Joseph Fitzgerald – former chief of police
   Vickie Lara – domestic violence victim, witness
   Tim Normand – witness

### FITZGERALD DEPOSITION
The defendant objects to the following portions of the deposition of Joseph Fitzgerald, taken on April 20, 2022, for the reason that plaintiff's counsel knowingly elicited testimony about a matter

on which the court has already ruled in favor of the defendant. The testimony is therefore not probative on a legitimate issue (see FRE 401), and is seriously prejudicial (see FRE 403).

Page 7 of the transcript -

```
                ... when -- when Mr. Hill was dragged out of the
       16       house all of the way out the door and to the patrol
       17       car, I didn't find that to be appropriate.
       18       MR. FOSMIRE:  Okay.  I am going to make an
       19       objection to that because it is non-responsive to the
       20       question and because it covers an area where the court
       21       has already ruled that there was no inappropriate use
       22       of force.  I will move to strike this testimony from
       23       the record.
```

Pages 9-10 of the transcript -

```
        4   Q    Okay.  Based on your review of the video, did you have
        5        any other observations, anything else that concerned
        6        you?
        7        MR. FOSMIRE:  Objection to the form of the
        8        question.
        9        MR. TOUTANT:  I will rephrase.
       10        THE WITNESS:  Okay.
       11   BY MR. TOUTANT:
       12   Q    Was there anything else from your review of the video
       13        that concerned you?
       14   A    The actions that were taken once the person was under
       15        arrest, when they were -- when he was dragged out the
       16        door.
       17   Q    Okay.
       18        MR. FOSMIRE:  Make the same objection that I
       19        did before.
       20   BY MR. TOUTANT:
       21   Q    Is that how -- is that how the situation should have
       22        unfolded there?
       23   A    No.
       24   Q    How should the situation have unfolded?
       25        MR. FOSMIRE:  I am going to object to the

        1        whole line of questioning, and if I can keep a
        2        continuing objection, I would appreciate it.
        3        MR. TOUTANT:  That would be fine.
        4        Go ahead, you can answer.
        5   A    No.  I have been doing this for 33 years.  When you
        6        arrest somebody, if they are intoxicated, you fight
        7        with them in a house, and then you get somebody to
        8        assist you, and you carry -- you know, carry them, walk
        9        them out the door.  I have never had to -- I have never
       10        seen anybody dragged out the door and dragged to a
       11        patrol car.  That's not what you do.
       12   Q    What should you do?
       13   A    Again, you should be able to get them to their feet
       14        with some help from a -- waiting for backup, another
       15        partner.  And if they are that intoxicated and the
       16        ambulance is there that's going to take them to the
       17        hospital, then you get the ambulance in there and you
       18        put them on a gurney and strap them down, and you get
       19        them to the hospital to be checked.
```

**NOTE: Depending on how the case comes in, the District Judge will have to decide objections to these excerpts.**

## LARA DEPOSITION

This deposition included testimony about "dragging" Hill outside. Again, this is testimony about a point that the court has already ruled on. The testimony is therefore not probative on a legitimate issue (see FRE 401) and is seriously prejudicial (see FRE 403).

p. 39 line 1 to p. 40 line 11 – testimony about Hill being dragged outside and left on the ground

```
           I do know -- because I was standing on the porch with
           them bringing him out of the house.  He hit his head -- they
           were still carrying him, but he hit his head on three
           step -- on the three steps as they were going down out of
           the door and outside.  I do know that.  It was like an ice
           rink in front of our -- in the driveway, so Timothy Normand
           still was helping him bring Jack to the vehicle, and then
           the two ambulances showed up.  And one of the EMS drivers
           helped him bring him to Justin Wonch's vehicle.
     Q     So Jack wasn't able to walk?
     A     No.
     Q     And Officer Wonch and Timothy Normand each had him by an arm
           and pulled him, dragged him outside; correct?
     A     I would believe it was by the arm and his --
     Q     Hip or thigh?
     A     Or leg or something because he's heavy.  He's very heavy.
     Q     Okay.  So they get him outside and lay him down on the
           sidewalk; correct?
     A     In the driveway.
     Q     That's the driveway?
     A     Yes.
     Q     Okay. He was screaming as he was going out the door. I
           didn't see that on the tape.  Do you remember -- did you
           observe him screaming on the tape?
     A     Yeah.  He was making like he was hurt.  He wasn't able to
           move, and Officer Justin Wonch kept telling him to get up
           and walk, and he refused -- or couldn't get up and walk, he
           said.
     Q     Okay.  He either refused, or he couldn't?
     A     Right.  He couldn't get up.
     Q     And your sense is he couldn't?
     A     Right.  That's why he was being carried out.
     Q     All right.  And other than his not being able to move, you
           did not ever hear him scream; right?
     A     No, he wasn't screaming.  He was screaming when he was going
           out the door, and then I didn't see anything else.
```

p. 41 –
```
     Q     Okay.  Do you remember that Jack was actually talking during
           this entire being dragged and laying down on the pavement,
           then being moved into the car?  Do you recall that he was
           actually conversing?
                 MR. TOUTANT:  Object to the form of the question.
     A     I don't recall him talking.
```

p. 77 –
```
     Q     At any time did you object to Jack being dragged outside?
     A     I didn't know how they were going to get him outside.  I
           mean, the way he was not complying with trying to get up and
           be arrested, I didn't know -- I knew that he was going to
           not be able to walk because he was in a lot of pain.  That
           is the reason why he got dragged out of the house.
```

p. 93 - objection to another reference to Jack being "dragged out"

11

```
Q    Before he and -- before he asked Tim to help him drag him
     out of the apartment, did he ask Jack if he was okay?
A    No.
Q    Did he ask Jack if he was feeling any pain?
A    Not that I know of because I was on the porch as they were
     being dragged out.  I never heard anything like that.
```

Additional objection - p. 89-90 - Toutant's improper use of prejudicial words and phrases
The witness did not use the phrase "beat up" or the word "attack." This was Toutant's choice of words and phrases, clearly chosen for their prejudicial effect. **NOTE:  This objection was overruled because the witness used a different term for the interaction.**

```
Q    In terms of after Jack was thrown to the floor and beat
     up --
              MS. MacGREGOR:  Objection; form.
Q    After he was thrown to the floor and beat up, you could tell
     he was hurt; is that fair?
              MS. MacGREGOR:  Objection; form; asked and answered.
A    Yes.
Q    So how many -- where were the flying elbows going?
              MS. MacGREGOR:  Objection to form.
Q    Where was Jack being attacked with the officer's elbows?
              MS. MacGREGOR:  Objection to form;
     mischaracterizes her testimony.
A    I don't understand.
Q    So you said that the officer was attacking Jack with his
     knees?
     A Yes.
              MS. MacGREGOR:  Objection.
Q    And with his arms; right?  What was he doing?
              MS. MacGREGOR:  Object.  Let me state my objection
     before you do a compound question.  She didn't testify he
     was attacking Jack with his knee or that there were flying
     elbows.  Go ahead.
Q    Did it look like an attack to you?
A    To me it was like roughhousing (indicating).  He was -- like
     he hurt him.
Q    Was it scary?
A    To me, yes, it was.
```

## NORMAND DEPOSITION

Objections on the "dragging" issue
p. 28
```
Q    All right.  At some point were you asked to assist the
     officer in getting Jack up?
A    Well, he asked me to drag him out to this (indicating) door.
Q    Out to door number 2?
A    Yeah.
Q    Okay.  Did you assist the officer from where Jack was laying
     on the ground to basically a standing position?
A    No.
Q    Did you just both drag --
A    We both drug him, yeah.  He grabbed an arm, and he asked me
     to grab the other arm.
Q    So Jack is still basically in a laid-out position?
A    He's sitting, I believe, at that point.
Q    He was sitting, and then you both lifted him from the
     shoulders?
A    We didn't lift him, no.  We just drug him on his bottom.
```

```
Q   On his rear?
A   Right.
Q   Okay. All right. At any point from the point where he's up
    against the wall and you're dragging him over to door number
    2, was Jack screaming in pain?
A   I don't think so.
```

pp. 29-30
```
Q   Okay. Do you remember -- so you helped get him dragged over
    to door number 2. Did you also help drag him outside, get
    him outside?
A   Out onto the porch I believe, yes.
Q   How did he get from the porch down onto the pavement?
A   I don't know. I went back in the house.
Q   Ok. You don't remember actually going outside?
A   No.
Q   Okay. Do you remember Jack talking while you were assisting
    the officer drag Jack out to the porch?
```

p. 33

```
Q   To the porch? Okay. All right. And Vickie thought that
    Jack may have hit his head on the porch steps, going down
    the steps. Do you have any memory of that at all?
A   No.
```

p. 35 – on questioning by Toutant, asking inappropriate opinion questions from a non-expert
**NOTE: This objection was sustained and this part will not be submitted.**

```
Q   Yeah. Would you want to be treated the way Jack was treated
    that day?
A   No.
            MS. MacGREGOR: Irrelevant.
Q   Do you feel that was appropriate?
A   No.
MS. MacGREGOR: Irrelevant.
Q   Do you feel that that was the way someone's civil rights
    should be treated?
            MS. MacGREGOR: Objection; irrelevant.
A   No.
Q   Do you think that his civil rights were violated?
            MS. MacGREGOR: Objection; irrelevant.
A   Yeah.
Q   Do you think that the amount of force that you observed
    Officer Wonch using on Jack was appropriate for how Jack was
    behaving?
            MS. MacGREGOR: Objection; irrelevant.
A   Honestly, no. I mean, I do believe he went a little
    overboard.
```

6)    Length of Trial: Counsel estimate the trial will last approximately 4 days, total, allocated as follows: 2 days for plaintiff's case (excluding jury selection; time estimation is contingent upon evidentiary considerations relating to admission of exhibits); 1-2 days for defendant's case.

7)    Prospects of Settlement: The status of settlement negotiations is: a settlement conference occurred on April 11, 2022 with Federal Magistrate Judge Maarten Vermaat

presiding via Zoom. Present for the plaintiff was his counsel, Phillip Toutant and plaintiff himself. Present for the defense was counsel M. Sean Fosmire and Thomas Shimmel along with Mark Ott, claims representative for Defendant. The Settlement Conference did not precipitate a settlement. Obstacles to settlement are that the parties are far apart with their settlement demands and the resolution of Defendant's motions concerning damages.

Respectfully submitted,

| **Numinen, DeForge & Toutant, P.C.** | **Kitch Drutchas Wagner Valitutti & Sherbrook** |
|---|---|
| /s Phillip B. Toutant | /s M. Sean Fosmire |
| PHILLIP B. TOUTANT (P72992) | M. SEAN FOSMIRE (P31737) |
| Attorney for Plaintiff | Attorney for Defendant |
| 105 Meeske Ave. | 1440 W. Ridge St., Ste. C |
| Marquette, MI 49855 | Marquette, MI 49855 |
| (906) 226-2580 | (906) 228-0001 |
| Phillip@numinenlaw.com | |

IT IS SO ORDERED.

Date: July 6, 2022         /s/ Maarten Vermaat
                                        MAARTEN VERMAAT
                                        UNITED STATES DISTRICT COURT